# CHARLESTON.

### BARTLETT *v.* BARTLETT.

Submitted June 13, 1892.—Decided December 3, 1892.

1. DEFICIENCY—SALE—LAND—ABATEMENT OF PRICE.

When there is a contract for sale by the acre of a tract of land represented to contain a specified number of acres, and there is ascertained to be a deficiency in quantity, a court of equity will, even after a conveyance has been executed, abate from the unpaid purchase-money the value of the deficiency at the stipulated price.

2. DEFICIENCY—SURVEY—MEASUREMENT.

In ascertaining the quantity, each party has a right to have the survey made by horizontal measurement, unless such party is estopped from asserting such right, or has waived the same, or unless surface measure has been specially contracted for.

*J. J. Davis* for appellant cited 19 W. Va. 488; 24 W. Va. 539; 77 Va. 619; 5 Leigh 606; Code (1891) c. 67, s. 2; 17 Gratt. 228; 23 Gratt. 38; 18 W. Va. 750, 751; Code (1891) p. 809, s. 35; 27 W. Va. 536.

*T. W. Harrison* for appellee.

HOLT, JUDGE:

This is a suit in equity, brought in the Circuit Court of Harrison county in April, 1889, by J. W. Bartlett, administrator, the appellee, against Job G. Bartlett, defendant and appellant, to enforce payment of vendor's lien for balance of purchase-money due on a tract of land sold and conveyed by plaintiff, administrator of John Ryan, deceased, to the defendant, J. G. Bartlett. On May 20, 1889, defendant filed a demurrer to plaintiff's bill, which, on argument, the Circuit Court was of opinion was well taken, and sustained the same, and, plaintiff not desiring to amend, the bill was dismissed at plaintiff's costs.

An appeal was taken to this Court by plaintiff, the decree of dismissal was reversed, and the cause sent back for further proceedings. See 34 W. Va. 33 (11 S. E. Rep.

732). On September 12, 1890, defendant filed his answer to which plaintiff replied generally. The depositions of various witnesses were taken by defendant on September 8, 1890, before his answer was filed, to the reading of which plaintiff indorsed exceptions: "They were taken before answer was filed, or any issue was made up in the cause." On December 30, 1890, various other depositions were taken by defendant, to which no exception was taken.

The plaintiff alleges in his bill that on April 16, 1884, he sold and conveyed to defendant, John G. Bartlett, a tract of land described in the deed filed therewith ;—that of the notes mentioned in the deed given for balance of purchase-money all were paid but the last;—that by sundry payments made on that it was so far paid that on April 3, 1888, there remained due only the sum of two hundred and sixty seven dollars and twenty seven cents. The note and deed are filed as exhibits. Plaintiff further alleges that defendant refuses to pay, was at the time of sale put in possession, and has since retained the same, enjoying the rents and profits. He prays for the enforcement of the vendor's lien reserved on the face of the deed by decree for sale of the land, and for general relief.

The note filed was for two thousand four hundred and eleven dollars and eleven cents, dated April 16, 1884, due three years after date, with interest payable to Jed. W. Bartlett, administrator of John Ryan, deceased, with various credits indorsed.

The deed filed as an exhibit was made April 16, 1884, by Jed. W. Bartlett, administrator of John Ryan, deceased, to Job G. Bartlett. The consideration recited is eight thousand two hundred and thirty three dollars and thirty one cents. One thousand dollars is recited paid in hand, and for the balance three notes given, and for their payment a lien is expressly reserved on the face of the deed. The land is conveyed with covenant of general warranty, describing the same by metes and bounds, after deducting and reserving from the boundary one acre, before conveyed for a schoolhouse. The tract contains two hundred and seventy six and three fourths acres, surface measure. It further recites that after the sale had been advertised in the

newspaper for four consecutive weeks the land was sold by Jed. W. Bartlett, administrator of John Ryan, deceased; that Job G. Bartlett, being the highest bidder at the front of the court-house on April 7, 1884, became the purchaser, his bid being twenty nine dollars and seventy five cents per acre.

The defendant, by his answer, says that plaintiff, by advertisement published in the newspaper, gave notice that on April 7, 1884, he would, in front of the court-house door of Harrison county, sell said land at auction, and he files a copy of the notice;—that at the sale he became the purchaser, at the price of twenty nine dollars and seventy five cents per acre, and at that price paid down a part, and gave bonds for the residue, on the basis of its containing two hundred and seventy seven acres;—that plaintiff, between the date of the sale and April 16, 1884, procured a surveyor, and caused the same to be surveyed by surface measure;—that defendant, when he heard of it, protested and informed plaintiff that he would not pay for the land by such survey—that it must be surveyed, and the quantity ascertained by horizontal measurement, as required by law;—that plaintiff gave no heed to defendant's protest, but proceeded to complete his surface measure survey;—that the deed was lodged in the clerk's office and recorded;—that, after he had taken it out, and saw that the quantity was ascertained by surface measurement, he at once informed plaintiff that he would not submit to a conveyance and survey by surface measurement, and again demanded that the quantity of land should be ascertained by horizontal measurement, which plaintiff refused;—that thereupon he had a careful and accurate survey made by the county surveyor by horizontal measurement, and found the tract to contain only two hundred and sixty nine and three fourths acres, excluding the school-house lot, of one acre, and the church lot, containing three twentieths of an acre, of which plaintiff had notice;—that he is entitled to an abatement at the rate of twenty nine dollars and seventy five cents per acre from the last installment of purchase-money;—that he promptly paid all the purchase-money due after such abatement, and demanded his note, which plaintiff

refused to surrender; and that there was only due at the time of the institution of this suit the sum of five dollars and sixty two cents, if anything, of purchase-money; and that since the suit he has paid five dollars and more (the evidence shows ten dollars).

Defendant further says that plaintiff, in his bill, does not show by what authority he sold the land, nor how he became invested with the title, or was able to sell or convey any to the purchaser; that John Ryan died leaving a number of heirs surviving him, upon whom the title was apparently cast by descent; that plaintiff, as far as shown by his bill, had no title or power to sell and convey the land to defendant; and defendant calls for full proof of his authority and title and power to sell, and prays that he be allowed an abatement upon the price of said land for the deficiency aforesaid. This answer was filed September 12, 1890.

On the 23d of January, 1891, the cause came on again to be heard on bill and exhibits filed therewith, answer of defendant and exhibits filed with it, general replication to said answer, depositions and exceptions of plaintiff thereto, and was argued by counsel; and the court, without passing upon the exceptions, decreed that the plaintiff recover of the defendant three hundred and three dollars, with interest from January 13, 1891, till paid, and costs, and, in default of payment after sixty days, appointed a commissioner, with directions to sell, *etc.*, from which decree defendant has appealed.

The defendant denied plaintiff's authority to sell or convey the land in controversy, and called upon him to produce proof thereof, and prayed for an abatement from the price, *etc.* There being but a general reply, I do not propose to consider the effect of such denial, and such call for proof of authority, by reason of Code (1891) s. 35, c. 125. No probate or letters of administration or certificate for obtaining them are exhibited by plaintiff with his bill, and when called on he ought to have produced one or the other, according to the fact; and defendant, under his answer, could have insisted on a proper, special replication. This may be a matter of no great importance. I mention it

chiefly on account of the form of the conveyance. This deed contains no recital of the grantor's power or authority to convey, simply styles himself "administrator of John Ryan, deceased," and, as time goes on, the usual and proper recitals of the source of his power and authority to convey may become matter of importance as well as convenience (and, I take it, is a matter which can now be very easily set right;) especially important that the deed should contain such recital, as the bill contains no such averment.

As to the exceptions of the plaintiff to depositions taken by the defendant, they were not passed upon by the court, and therefore are to be regarded as read, and, not being incompetent, are to be read on appeal, as waived by the exceptor prevailing below. As a question of practice, it may not be improper to state that, apart from any statute, the general rule is that the issue must be made up before the proof is taken (1) because (in chancery) no proof can be admitted of any matter which is not noticed in the pleadings [1 Daniell, Ch. Pr. (5th Amer. Ed.) top p. 853, bottom p. 815;] (2) "because in every fair trial of a controversy in a court of equity notice of the opposing claims of the parties must be given by each to the other before the proofs can be taken, or the trial begin."

There are exceptions, of course, to the statement that the issue must first be made up. For example, the plaintiff can not take his bill for confessed against a non-resident not appearing and brought in by order of publication, but must in some way prove his case, and so in most cases; but this is no exception to the last statement, for he has filed his bill, and thereby given all the notice he can of the facts relied on to prove his claim. The Revised Code of 1819 recognized and regulated the old practice of taking depositions by commissions in the State as well as out of it, within a prescribed probatory term—first, six months; other statutes following reduced it to four months; then by act of 1822-23 (page 37) provided that any deposition, although taken after the four months had elapsed, might be read as evidence at the hearing. See *Poling* v. *Johnson*, 2 Rob. (Va.) 255; *Dalby* v. *Price*, 2 Wash. (Va.) 191. "Shortly afterwards (Acts 1825-26, p. 217; Acts 1827-28, p. 21) the law

was re-enacted so as to declare that from the filing of the bill until the final hearing of any case either party might, without any order of court, obtain a general commission, and take depositions to be read therein." 2 Bart. Ch'y Pr. § 218, and notes. Finally, our statute law reached its present state, in which no commission is any longer necessary, either as to taking depositions without or within the state; nor is any probatory term now fixed by statute, but it is left to the sound discretion of the court. Code (1891) c. 130, § 34, p. 828.

Prior to the adoption of the act of 1827-28, and upon the construction of the act of March 7, 1826, it was held in *Moore* v. *Hilton*, 12 Leigh, 1, that, after an interlocutory decree upon a hearing deciding the question of fact in issue between the parties, neither party had the absolute right to introduce new evidence touching the question so decided, but the introduction of such evidence depended on the sound discretion of the court. See 2 Bart. Ch'y Pr. § 218.

Our statute on this branch of the subject is found in section 35, c. 130, Code, and is as follows : "Reasonable notice shall be given to the adverse party of the time and place of taking every deposition ; and in a suit in equity a deposition may be read if returned before the hearing of the cause, although after an interlocutory decree, if it be as to a matter not thereby adjudged, and be returned before a final decree."

I hardly think this relates to and justifies defendant in taking depositions before the filing of his answer. It might do so, however, in taking depositions before a commissioner in chancery executing an order of reference, but it would even then be exceptional, and the reading subject to the discretion of the court.

But, whether read or not, the pleadings, exhibits and depositions sufficiently prove the facts set forth in defendant's answer that it was a sale by the acre ; that it was surveyed by horizontal measurement and found to contain two hundred and sixty nine acres (see deposition of Holden ;) and, unless the contract of sale expressly provide otherwise, "every survey, whether original or not, shall be made by horizontal measurement." Code (1891) c. 68, s. 2. In fact the quantity can not be accurately determined in any other

way; and, where lands are sold at a high price per acre, such mode of careful and accurate measurement becomes a matter of importance.

It is shown by the evidence that the survey of the county surveyor was thus carefully made by horizontal measurement, which makes a difference of about seven acres in the quantity. The proof is conclusive, nor is there any conflicting testimony on the point, that the land was put up and offered for sale by the acre as containing two hundred and seventy seven acres, was sold at twenty nine dollars and seventy five cents per acre, and was conveyed as a sale by the acre, as containing two hundred and seventy seven or two hundred and seventy six and three fourths acres (latter being recited in the deed). "It is well settled that if a deficiency in quantity is found to exist where the contract is a sale by the acre, the purchaser will be entitled to an abatement for the value of. the deficiency, and that a court of equity will, even after a conveyance is executed, abate the deficiency from the unpaid purchase-money." *Thompson's Adm'r* v. *Catlett*, (1884) 24 W. Va. 524; *Koger* v. *Kane* (1833) 5 Leigh, 606.

Neither is the defendant estopped from claiming such abatement by his acceptance of the deed, for as soon as he saw and read the deed he notified the plaintiff that he would not accept the surface measurement as the proper mode of ascertaining the quantity, and himself proceeded to have it ascertained by careful horizontal measurement, made by the county surveyor. From the evidence I infer that the survey made by Surveyor Wilkinson is as nearly correct as is likely to be obtained. Still, as it was *ex parte*, the plaintiff should not be bound by it; but, if a re-survey is desired by him, the court should take care that the defendant is not charged with costs of surveying again, which the event may show to have been unnecessary.

The decree of January 23, 1891, is reversed, and the cause remanded, with directions to the Circuit Court to ascertain and allow defendant the proper abatement from the purchase-money.

REVERSED.  REMANDED.