# CHARLESTON.

## HALL MINING Co. *v.* CONSOLIDATED FUEL Co.

### Submitted June 2, 1910.  Decided March 14, 1911.

1. CONTRACTS—*Construction.*

    The true rule for interpretation of a contract requires consideration of all its parts, in the light of its purpose, the nature of the subject matter and the situation of the parties.  (p. 49).

2. SAME—*Construction—Practical    Construction—Application    of Rule.*

    The rule of practical construction applies when the contract, considered as a whole, leaves the intent of the parties doubtful as to the purpose and effect of a particular clause.  (p. 50).

3. SAME—*Construction.*

    A clause in a contract between a coal mining company and its agent for the sale of its coal, requiring the latter to pay the former not less than a specified sum for each and every ton of coal sold and shipped under the contract and as much more as it should sell for, treated by the parties as one requiring no more than payment of an aggregate sum sufficient to make an average price per ton not less than that specified, and read in the light of the nature of the subject matter and other clauses, making it obligatory upon the agent to sell, at the best prices obtainable, all the coal produced by its principal and pay over each month the prices brought by all coal sold in the preceding month, is interpreted as requiring payment of such average price and not as having fixed a minimum sale price applicable to each ton shipped, nor as a guaranty that each ton should be sold or paid for at the price so specified.  (p. 50).

    (BRANNON, JUDGE, absent.)

Error to Circuit Court, Mercer County.

Action by the Hall Mining Company against the Consolidated Fuel Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Ritz & Ritz* and *D. E. French,* for plaintiff in error.

*Sanders & Crocket,* for defendant in error.

POFFENBARGER, JUDGE:

All vital questions raised on this writ of error depend, for their solution, upon the construction of a contract. Accepting the interpretation thereof claimed by the defendant in error, the Hall Mining Company, and enforcing the same by its rulings, the trial court rendered a judgment in favor of said company for $3,117.13. As interpreted by the plaintiff in error, the contract imposed no liability upon it that had not been fully discharged before this action was commenced.

The contract was one of agency for the sale of coal, the defendant in error, a producing company, being the principal and the plaintiff in error, a selling company, being the agent. Provisions, requiring the agent to collect for all coal sold by it and to pay for all coal shipped upon its orders, are special features, peculiar to such contracts, which lie at the root of this controversy. One clause requires the agent to pay the principal not less than $1.10 per net ton of 2000 pounds for each and every ton of coal shipped. It has paid for all coal shipped at an average price of $1.14 per net ton, but, under a final settlement on this basis, a great deal of the coal would be paid for at prices far below $1.10 per ton, as it was sold at prices ranging from 70 cents to $2.50 per ton, and the agent has paid just what it sold the coal for and no more. The principal claims right to $1.10 for every ton shipped, whether it sold for that much or not, and also to any excess over that sum for which any coal was sold. The inquiry thus raised is, whether the contract fixed a minimum sale price or settlement price of $1.10 for each ton, or allowed the agent to sell and settle at prices yielding to its principal an average of $1.10 per ton or more.

The agent obligated itself to sell the "entire out-put of coal from the mines" of its principal; to find a market for it; to sell it "at all times at the highest market price obtainable for the quality of coal furnished; to pay to its principal "not less than one dollar and ten cents net per net ton of two thousand pounds for each and every ton of coal shipped to it" by its principal, under the contract, " and as much more than that sum as such coal" should "bring"; to furnish monthly statements to its principal, showing the number of cars, weights and prices; and to pay, on or before the 20th of each month, "the price for which

it sold the coal" during the preceding month, less 10% commission, whether collected or not. These are all the provisions that seem to bear materially upon the interpretation of the clause involved.

The period covered by the contract was one year, beginning April 1, 1907, and ending March 31, 1908. Under it, a great deal of coal was handled and all paid for at the prices for which it was sold, prior to the institution of this action. The original parties to the contract were the plaintiff in error and the Yukon Coal Company. About November 1, 1907, the Hall Mining Company purchased and took over all the property and assets of the Yukon Coal Company, except its land which it leased for a period of fifty years, and continued the operation of its mine and shipment of coal to, and upon the orders of, the plaintiff in error. Monthly payments were made to the Yukon Coal Company for the coal at the prices at which it had been sold, while it operated the mines. These payments were all accepted without objection or demand for the difference between the prices for which the coal had been sold and the alleged minimum of $1.10 per ton. Like payments were accepted by the Hall Mining Company, without objection or such demand, until sometime in March, 1908, the last month of the contract period. However, a contention did arise in the month of December, 1907, as to whether shipments were being made under the contract, the defendant in error claiming they were and the plaintiff in error that they were not. Thereafter the plaintiff in error wrote on each of its checks a memorandum to the effect that it was given as payment in full for all the coal sold in the preceding month. It may be that the present controversy lay at the bottom of this contention, and, if so, it stands in the way of the application of the principle of practical construction, relied upon by plaintiff in error. But, as it dates back only to December, the ninth month of the contract period, it is entitled to but little weight. For the eight preceding months, the Yukon Coal Company had done business with the plaintiff in error, under this contract as interpreted by the latter, receiving monthly payments without objection or claim of the right now set up by its assignee. If applicable, the operation of that principle had fixed and determined the construction before the

assignment of the contract, and the assignee took it in the condition in which it then was. Rights had vested under it as it then was, and had been previously, construed. The assignee's right could not exceed that of its assignor.

The argument for the defendant in error proceeds altogether upon the theory of a written contract, clear, unequivocal, unambiguous, and, therefore, not subject to the principle of practical construction. Whether it is such a contract is to be determined in the light of its purpose, subject matter and provisions. While the clause relied upon said the agent should pay not less than $1.10 net per net ton for each and every ton of coal shipped, it must be read in connection with all the others, and also in the light of the facts disclosed, showing the situation of the parties, their purpose, the nature of the business to which the contract relates and the usual method of conducting it. as the agent was bound to take the entire product of the mine, the marketing of all the kinds of coal produced was contemplated. This included both low priced and high priced coal, slack as well as lump coal, nut coal and all other grades. The contract was without limitation as to the kind or quality of coal. The agent was expected to find a market for all of it. It did not agree to become a purchaser of coal. Its contract was one of agency. Its duty was to sell the coal at all times at the highest market price obtainable for the quality of coal furnished by its principal. On or before the 20th of each month, it was bound to pay to its principal the price for which it had sold the coal. No minimum sale price was fixed. Determination or limitation of this, as well as the maximum price, was left to the market conditions and the good faith and diligence of the agent. The clause relied upon dealt, not with the sale price at all, but only with settlement, guaranty and payment of the proceeds of sale. A limitation as to sale price, if any was intended, naturally and properly belonged to the provision relating to the selling price, but none is found there. On the contrary, settlement of the selling price was referred to the possibilities of the market, and the requirement, was to pay for the coal at the prices for which it should be sold. These clauses must have effect as well as the other. The instrument is to be construed as a whole. We think, therefore, the intent to hold the agent to a minimum price

for each and every ton is not clear and undoubted.  It is equally
reasonable to say, upon consideration of all the language used,
that the intent was to require settlement and payment at a
minimum average price of not less than $1.10 per ton, deemed
to be an indirect limitation as to sale price sufficient to protect
the seller.   Upon this latter theory, the parties conducted their
business and made their settlements, without controversy, for
a period of eight months, and, for practically all the remaining
four months, payment was accepted by the assignee of the con-
tract on the same basis.   Application of the rules of con-
struction, unaided by conduct, might bring us to the same inter-
pretation, but, in view of the uncontroverted facts, bearing upon
the question of intent, we forego inquiry as to interpretation of
the contract, ascertainable from consideration of its terms
only.

From this conclusion it follows, that the court erred in giving
plaintiff's instruction No. 1, telling the jury the plaintiff was
entitled to recover the amount claimed by it for coal shipped in
the months of December, 1907, and January, February and
March, 1908, if they should find coal had been shipped as claim-
ed by the plaintiff and not paid for in full, according to its
claim and contention as to the force and effect of the contract;
and also in refusing to give, upon the request of the defendant,
a peremptory instruction to find for it.   Defendant's instruction
No. 2 should have been given also, its instruction No. 1 having
been refused, for it is, in substance and effect, the same as
said instruction No. 1.

For the reasons stated, the judgment will be reversed, the
verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*