# CHARLESTON.

LIGHT *v.* E. M. GRANT & COMPANY *et als.*

Submitted September 11, 1912.   Decided October 21, 1913.

1.  MINES AND MINERALS—*Sale of Coal in Place—Right to Rescind.*
    The grantee of coal in place in a deed conveying all the coal in a
    tract of land cannot rescind the sale merely because the coal area
    in the land is not as large as he had hoped or expected to obtain,
    provided there is a substantial quantity of coal in the land.   (p. 57).

2.  SAME.
    Nor can rescission of the sale executed by such deed be had be-
    cause of non-existence of a particular coal vein or measure in the
    land.   (p. 57).

3.  EVIDENCE—*Parol—Deed to Coal in Place.*
    On a bill for such rescission, parol evidence to prove expectancy
    of a particular vein or a representation of the presence thereof in
    the land is inadmissible.   (p. 58).

4.  MINES AND MINERALS—*Sale of Coal in Place—Deficiency in Quan*
    *tity—Abatement from Price.*
    Under a sale of land or coal by the acre, there may always be an
    abatement from unpaid purchase money, or a recovery of purchase
    money paid, in case of a deficiency in the quantity of the land or
    coal.   (p. 59).

5.  SAME—*Deed to Coal in Place—Ambiguity.*
    A deed for coal, conveying a certain number of acres as acres of
    coal in consideration of a sum of money which is an exact multiple
    of the number of acres specified, is ambiguous on its face as to
    whether it is a sale by the acre or a sale in gross.   (p. 59).

6.  SAME—*Deed to Coal in Place—Construction.*
    In such case the purpose of the vendee to obtain coal, not land,
    non-existence of coal in a large portion of the land and an option
    for purchase of the coal in the land at a certain price for each and

every acre of the coal, under which the deed was made, may be considered in seeking the intent of the parties and the deed read in the light thereof is properly construed as embodying a contract of sale by the acre. (p. 59).

(MILLER, JUDGE, absent).

Appeal from Circuit Court, Preston County.

Action by J. M. Light against E. M. Grant & Co. and others. From judgment for plaintiff, defendants appeal.

*Reversed and Remanded.*

*P. J. Crogan,* and *Goodwin & Reay,* for appellants.

*Hughes & Conley,* for appellee.

POFFENBARGER, PRESIDENT:

To the bill for the enforcement of a vendor's lien in this cause, the answer set up two alternative defenses, a right of rescission of the contract of sale, with a recovery of the purchase money paid, and an abatement from the unpaid purchase money for a deficiency, both of which were disallowed by the court, and a decree was entered for the full amount claimed by the plaintiff with interest thereon.

The deed in which the lien was reserved conveyed "all the coal in, on and underlying all that certain tract of land owned by the grantors", described as containing 244.55 acres, out of which there was reserved a strip containing 4.157 acres which had been conveyed to a railroad company out of the tract, and six acres of coal to be located in a contiguous body under and around the dwelling and outbuildings on the property, leaving 234.4 acres of coal. The consideration was $2,812.80, of which one-third was paid in cash and the balance deferred in two equal payments for one and two years, respectively. The conveyance was made March 30, 1907, pursuant to an option dated October 12, 1905, several extensions of which had been granted, the last one until January 2, 1907.

Unsustained by proof, the prayer for rescission was properly denied. The answer set up two grounds therefor, the non-existence of any coal in the land of the kind contracted for, and fraud on the part of the plaintiff, consisting of misrepre-

sentation as to the kind and quantity of coal in his land.
Though neither the option nor the deed specifies any particular
vein of coal as the subject matter of the contract, the answer
charges the contract was for coal of the Upper Freeport vein,
which averment is denied by a special replication. Some wit-
nesses were of the opinion that none of that vein of coal is found
in the land, while others believed it contains five or six acres
of such coal. That the quantity thereof, if any, is meagre, is
an undisputed fact in the case. A witness for the defendant
testifies to a representation of the existence of a large quantity
of such coal by the plaintiff, but this the plaintiff denies, say-
ing he made no claim of that sort, but, on the contrary, had
said there was very little of the Upper Freeport vein of coal in
his land. To strengthen the evidence of the claim or represen-
tation contrary to the fact, evidence was adduced tending to
show the Upper Freeport vein of coal was the only one in that
section of the country at that time deemed to have a commercial
or marketable value.

The general terms used in the option and deed, calling for
all of the coal in the land, clearly negative any intention to
limit the conveyance to a particular vein. To admit parol evi-
dence of intention so to limit it would clearly violate a well
established rule of evidence. The terms of the deed are certain
and definite. It contains not a word upon which any claim of
ambiguity. or uncertainty can' rest, and no latent ambiguity
is disclosed by the oral testimony. Hence there is no basis
or ground for the admission of parol evidence. It could
perform no office other than contradiction of the plain
terms of the written contract, and that is inhibited by a firmly
established rule of evidence. *Poling* v. *Williams,* 55 W. Va. 69;
*Troll* v. *Carter,* 15 W. Va. 567. Having contracted for all of the
coal in the land, the defendants are not entitled to rescission of
the contract on account of the absence or non-existence of a par-
ticular vein. *Shackleford* v. *Fulton,* 139 Fed. Rep. 97. Nor is
the testimony adduced sufficient to show they were induced to
enter into the contract by any representation as to the existence
of the vien of coal in question. On this issue, the evidence con-
sists of the testimony of two witnesses only, and they squarely
contradict each other. Moreover, a preponderance of the evi-

dence favors the presence of the Upper Freeport coal in the
land, and there is no pretense of a representation that the Free-
port vein underlies the whole thereof. That the land contains
less coal than was expected or represented constitutes no ground
for rescission, for the quantity was not in any way made an
essential element of the contract. It's plainly expressed purpose
was to take and pay for such coal as the land contained,
whether much or little, provided there should be a substantial
quantity of it.

If the sale was one by the acre, as regards the coal, and not
in gross, there should have been a large abatement from the
price, for 234.4 acres were sold, and, as a matter of fact, the
land contained at the most not more than 125 acres of coal in
veins, the existence of which has been ascertained and shown,
In all cases of sale by the acre, there may be an abatement from
the purchase price for deficiency in quantity. *Butcher* v.
*Peterson,* 26 W. Va. 447; *Bartlett* v. *Bartlett,* 37 W. Va. 235;
*Thompson* v. *Catlett,* 24 W. Va. 524; *Board* v. *Wilson,* 34 W.
Va. 609; *Neal* v. *Logan,* 1 Grat. 14, 15. Right to abatement
or compensation for a deficiency in the case of a sale of land
in gross stands upon the existence of a warranty of quantity
or fraud and misrepresentation on the part of the vendor, re-
specting the quantity. *Crislip* v. *Cain,* 19 W. Va. 430; *Hans-
ford* v. *Coal Co.,* 22 W. Va. 70; *Newman* v. *Kay,* 57 W. Va. 98;
*Winton* v. *McGraw,* 60 W. Va. 98.

As the consideration agreed upon and recited in the deed
is an exact multiple of the number of acres conveyed, it is
ambiguous on its face as to whether it was a sale in gross or a
sale by the acre. *Newman* v. *Kay,* cited; *Hansford* v. *Coal Co.,*
cited. On the question of the construction of such a deed or
determination of the question of intent, only evidence of the
circumstances which surrounded the parties, their situation
when the deed was made and their conduct in carrying the con-
tract into execution, is admissible. *Winton* v. *McGraw,* cited;
*Newman* v. *Kay* cited; *Hansford* v. *Coal Co.,* cited; *Crislip* v.
*Cain,* cited. A mere declaration of intention cannot be consider-
ed. In this instance, the vendees were purchasing coal, not land,
and it would be unreasonable to suppose they intended to pay coal
prices for land in which there was no coal, or, in other words, to

pay for what did not exist. The option they had taken upon the land provided for payment of $12.00 an acre for each and every acre of coal, not for the land, nor any supposed quantity of coal, and also for ascertainment of the coal acreage in the land, and the deed itself represents "a net coal area  *  *  *  of 234.4 acres". The force of these facts and circumstances stand unopposed by anything indicative of a sale in gross, and they must be accorded their legal effect, making plain and obvious an intention on the part of the parties to effect a sale of the coal by the acre.

The land was mountainous and steep. Near the top there is a coal area of five or six acres in the Upper Freeport vein. Some distance below this, there is another area which contains about 40 acres which is supposed to be in the Lower Freeport vein. Still lower down there is an area of about 120 or 125 acres which is said to be in one of the Kittanning measures. Such is the testimony of the witnesses for the plaintiff. That of the witnesses for the defendants classes the upper area as the Lower Freeport, the next one as the Kittanning, and the third one a Mercer coal bed of the Pottsville ·measures or series. The deficiency established by this evidence is the difference between 125 acres and 234.4 acres, amounting to 109.4 acres, which, at $12.00 an acre, amounts to $1,312.80. This deducted from the full amount of the purchase money recited, $2,812.80, leaves a balance of $1,500.00, of which $937.60 has been paid, leaving a balance of $562.40, bearing interest from March 30, 1907.

In conformity with this conclusion, the decree will be reversed and the cause remanded, with directions to the trial court to enter a decree for said sum of $562.40 with interest thereon from the 30th day of March, 1907, to be added to the principal and included in the decree as of the date thereof, and for further proceedings in accordance with the rules and principles governing courts of equity.

*Reversed and Remanded.*