# CHARLESTON.

ROBERTS *et al.* v. AMERICAN COLUMN & LUMBER CO.

Submitted March 16, 1915.   Decided May 25, 1915.

1. CONTRACTS—*Judgment—Findings of Fact—Settlement and Abandonment—Question for Jury—Conflicting Evidence.*

Whether the parties to an uncompleted contract finally settled all matters of account between them and abandoned the unfinished portion of the work agreed on, depending on conflicting oral evidence, is a question of fact for a jury, whose findings ought to be carried into judgment unless plainly erroneous or unwarranted by proof. (p. 293).

2. SAME—*Breach—Defense—Conduct of Stranger.*

A contract, without qualification or restriction, by one *sui juris,* to do or perform an act not in itself unlawful, immoral or impossible of performance, casts upon him a duty from the discharge of which he can not excuse himself by reason of the lawful conduct or interference of a stranger to the undertaking. By neglecting to qualify his promise, so as to make such an excuse available, the promisor waives it as a defense against a recovery for non-performance. (p. 293).

3. SAME—*Renunciation—What Constitutes—Damages.*

The failure or refusal of one party to a contract to perform his covenants, and who, ignoring the rights of the other party thereto

not in default, undertakes to complete the work agreed by the other to be done, operates as a renunciation of the agreement, and renders him liable in damages at the suit of the party so injured thereby.   (p. 294).

Error to Circuit Court, Fayette County.

Assumpsit for breach of contract by Roberts & Stanley against the American Column & Lumber Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Dillon & Nuckolls,* for plaintiff in error.

*R. T. Hubbard, Jr.,* and *F. N. Bacon,* for defendant in error.

LYNCH, JUDGE:

In assumpsit for breach of contract, the jury awarded plaintiffs $750 damages.  For reversal of the judgment upon the verdict, the defendant company relies mainly on the giving and refusal of instructions.   The objection to exclusion of evidence can not now be considered, because not covered by bill of exceptions or embodied in the motion below for a new trial.

By the contract sued on, dated July 30, 1907, plaintiffs agreed to cut and manufacture into lumber all the timber owned by defendant on Likens branch in Fayette county for $9.00 per thousand feet, and also all its timber on Rattlesnake draft and Lick draft in the same vicinity for $9.50 per thousand feet.  Operations were to begin first on Likens branch and within thirty days.  Payments were to be made by defendant on the fifteenth of each month for the lumber sawed during the preceding month, except that ten per cent thereof was to be retained by it until completion of the entire contract, which amount was to be forfeited by plaintiffs, or so much thereof as might be necessary to reimburse defendant, for their failure to do the work to the extent and in the manner particularly stipulated.   Then followed this language: ''The second party grants the first parties sufficient surface for mill sites, for the erection and operation of saw mills and for log yards and buildings, together with necessary

rights of way for the proper carrying out of this agreement. The party of the second part anticipates no difficulty in getting access to 'Rattlesnake draft and Lick draft, but should they for any reason be delayed in entering these hollows it is understood and agreed that the parties of the first part will not demand any damages for such delay''.

Plaintiffs promptly began, and within the ensuing year satisfactorily completed, the manufacture of the timber on Likens branch. To complete the remainder of the contract, it was necessary to secure the rights of way therein prescribed from the Gallego Coal & Land Company on and over its adjoining land. These defendant attempted for several years to obtain, without success. But, in January, 1913, it did secure, from the vendee of that company, restricted and qualified rights of way whereby it alone, but not any other, was permitted, and promptly thereafter it began and until and during this litigation continued, to manufacture and transport on and over such adjoining land the timber in Rattlesnake and Lick drafts. Plaintiffs' action was brought in July, 1913; and the declaration alleged, as cause therefor, failure of defendant to furnish them the necessary rights of way as agreed, and further averred that defendant, after securing for itself the rights of way mentioned, had proceeded, without notice to them and in disregard of its contract, to manufacture and remove the remainder of its timber covered thereby.

Defendant seeks to exonerate itself from liability by construing the language quoted as not imposing an absolute duty to furnish the requisite rights of way, but only the duty to use reasonable efforts to obtain access to the timber on the other branches, and that, having diligently endeavored so to do, it is under no liability to reimburse plaintiffs for any loss suffered by them. It is admitted by plaintiffs that such efforts were used and continued until 1913, and, by defendant, that the rights of way required by the contract were never secured. The trial court, over objection, instructed the jury that under the contract ''defendant was bound to furnish the rights of way''. and that the fact that it had been unable to procure them ''would contsitute no defense to this action''. The giving of this instruction is relied on for reversal. Hence

the necessity of determining the true purport and meaning of the clause in controversy.

Clearly, it seems to "grant necessary rights of way" over lands belonging to others than the parties to the agreement, lands not owned or controlled by either of them. Defendant undertook, without limitation or qualification, to provide access to Rattlesnake and Lick branches. It was a positive engagement. The difficulty or impossibility of securing the rights of way was a contingency not provided for, as manifestly it ought to have been in view of the proprietorship of the intervening lands. Delay in obtaining access to the two branches was the only qualification by defendant deemed necessary against its positive agreement, the only provision being that plaintiffs "will not demand any damages for such delay" should it occur. Fairly construed, the contract required defedant to secure the necessary rights of way for plaintiffs' use over such interjacent lands. These it covenanted to secure; and on such covenant plaintiffs evidently relied, because without performance by defendant they could not keep their engagement.

It is not claimed by defendant that the subsequent impossibility of obtaining the promised rights of way discharged the contract. Indeed, this contention could not be made. 3 Elliott on Contracts §1916; 6 Rul. Cas. Law 997, 1014; 9 Cyc. 624-629. Though the performance of a duty or charge imposed by law may be excused where by reason of some legal disability performance can not be made, and the party failing is without fault and has no remedy over; yet "when the party by his own contract creates a duty or charge upon himself he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract". *Paradine* v. *Jane,* Aleyn 26; *Water Co.* v. *Knappman,* 64 N. J. L. 240; *Vale* v. *Suiter,* 58 W. Va. 353; *Bryan* v. *Spurgin,* 37 Tenn. 681. In the Knappman case, but three exceptions to the rule are noted: first, where the subsequent impossibility is imposed by law; second, where the continued existence of the subject matter is an implied condition of the contract; third, in contracts for personal services, "in which there is generally the implied condition that the person who is to render

-the service is alive and not incapacitated by illness". 6 Rul.
Cas. Law 998.

Though the obligation of a contract does not inhere or
subsist in the agreement *proprio vigore,* the law so regards
contracts and attaches to them such sanctity that, when
fairly entered into by parties *sui juris* for purposes not
immoral, unlawful or impossible of performance, it will not
excuse non-compliance with the unconditional and unqualified
terms of the undertaking. While it may not compel either
party to keep his engagements and literally perform his
covenants, it will not, on account of any hardship or impedi-
ments not contemplated by them at the inception of their
agreement and for which they made no exception or provision,
relieve the party in default from the liability incurred by
him. It requires both parties to be faithful to their covenants,
or respond in damages for their violation. If they have made
no provision for a dispensation, the law gives none. 6 Rul.
Cas. Law 997.

So where two persons entered into a contract, one of them
agreeing to erect on the lands of the other, and when erected
to superintend the operation of, certain mills, the owner to
furnish the men, appliances, material and means necessary
and requisite for the purpose, among which was the construc-
tion of a canal as a conduit for water over lands not owned
or controlled by either party to the agreement and over which
the promisor had not theretofore acquired or sought to acquire
the necessary rights of way, the latter was held liable on his
covenant, the court saying "it is the duty of contracting par-
ties to provide against contingencies", as "they are presumed
to know whether the completion of the duty they undertake be
within their power"; and, further, that "there is nothing
illegal, immoral or impossible, so far as appears, to prevent
it. It does not appear that there was any refusal, by the
proprietors, or application to them, for the purchase of the
land, or of right of way; and, even if it did appear that the
performance of this contract had become impossible from
this cause, it would not absolve the promisor from his con-
tract. He had undertaken to furnish means to build those
mills, and a supply of water was a necessary ingredient in
this contract. He knew of this necessity, and deliberately con-

tracted to accomplish it, and, if it should subsequently appear that he was prevented, by the refusal of the proprietors of the land to grant the privilege, he must abide by the consequences, and is answerable, in damages, for his failure". "He could not set up this kind of impossibility in avoidance of his liability". *Stone* v. *Dennis,* 3 Port (Ala.) 231; 6 Rul. Cas. Law 1014. "It is usual and lawful to covenant for the acts of others; and if the party covenanting can not secure the performance of those acts he must make recompense in damages", as where one member of a copartnership, who agreed without the consent of his associates to introduce a new member into the firm and thereafter failed to obtain such consent, was held liable for the breach of his agreement. *McNeil* v. *Reid,* 9 Bing. 68.

So in *Reid* v. *Edwards,* 7 Port (Ala,) 508, it was held: "The rules for the construction of contracts, whether verbal, written or under seal, are the same. All contracts are to be performed according to their legal interpretation, and where one undertakes expressly for the performance of some act, the positive engagement casts upon him a duty, the discharge of which can not be excused by showing his inability by reason of the lawful interference of some third person". If he neglects "to qualify his contract, so as to make such an excuse available, he waives it as a defense against a recovery of damages for non-performance". All contracts fairly and honestly made for a legitimate and lawful purpose, upon a valuable consideration, by persons not under disability, and not inherently impossible of performance, are enforceable. So that, if one engages apartments at a hotel, promising that another person will occupy and utilize them, he thereby becomes personally liable in case the latter refuses to fulfill the engagement. "This is simply a case of the appellant's undertaking to do a thing perfectly lawful which he was unable to perform". *Danenhower* v. *Hayes,* 35 App. D. C. 65, 33 L. R. A. (N. S.) 698. In *Water Co.* v. *Knappmann, supra,* it was held: "Where a water company expressly contracts to supply water to a factory for fire purposes, and, by reason of a failure to do so, the factory is destroyed by fire, the water company is liable for the resulting loss, notwithstanding the failure to supply the water was due to the breaking of pipes without

any fault on the part of the water company''. ''If the performance becomes impossible by contingencies which should have been foreseen, and provided against in the contract, the party will not be excused; for it was his own folly that he did not, by his contract, exempt himself from responsibility in such contingencies. In omitting to do so, he took the risk upon himself, and must abide the consequences''. *Bryan* v. *Spurgin, supra; Bank v. Burt,* 87 Mass. 113; *Railroad Co.* v. *Hoyt,* 149 U. S. 1; *Van Etten* v. *Newton,* 8 N. Y. S. 478. ''The rule is well established that, where a party by his own contract creates a duty or charge upon himself, his undertaking must be substantially complied with under any and all circumstances. To excuse a performance his contract must provide for it''. *Vale* v. *Suiler, supra.*

Defendant was required, under the contract, to obtain the rights of way within a reasonable time. While the contract itself did not expressly specify a period for performance, the legal implication arising therefrom was that the thing contracted to be done should be performed within a reasonable time after the date of the agreement. 9 Cyc. 611, 613; *Hanly* v. *Watterson,* 39 W. Va. 214; *Poling* v. *Boom & Lumber Co.,* 55 W. Va. 539; *Merriman* v. *Cover,* 104 Va. 428; *Duke* v. *Railway Co.,* 106 Va. 152. Whether or not such reasonable time had here elapsed was a jury question. 6 Rul. Cas. Law 896; 9 Cyc. 614.

Plaintiffs have a further ground of action. Properly interpreted, the declaration avers two breaches of the contract sued on; first, failure to obtain the necessary rights of way; second, the action of defendant in assuming charge and control of the timber in Rattlesnake and Lick drafts and in proceeding itself to manufacture it into lumber, with entire indifference to the rights of plaintiffs. Such conduct by defendant amounted to a renunciation and repudiation of its contractual obligations, and constituted an actionable breach, entitling plaintiffs to sue at once for the damages sustained. *Bannister* v. *Coal & Coke Co.,* 63 W. Va. 502.

The question of waiver or abandonment by plaintiffs of their contract, at the time of the payment to them of the ten per cent of the money coming due for work already done, was one of fact for the jury, upon which the instructions properly

given were full and explicit. *Cunningham* v. *Cunningham,* 46 W. Va. 1; *Lumber Co.* v. *Friedman,* 64 W. Va. 151.

The judgment will be affirmed.

*Affirmed.*