## CHARLESTON.

D. W. TAYLOR *v.* E. J. THOMAS

(No. 6238)

Submitted November 13, 1928.   Decided November 20, 1928.

*A. M. Belcher,* for plaintiff in error.
*S. L. Flournoy,* for defendant in error.

HATCHER, JUDGE:

A judgment was recovered by the plaintiff in the lower court for his part of unpaid royalty on leased coal. The defendant files no brief but his petition for a writ assigns the following errors which we will consider as enumerated:

"(1) The Court erred in sustaining the demurrer of the plaintiff to Special Plea No. 3 and in refusing to allow the same to be filed.

(2) The Court erred in refusing to allow the defendant to show that a large part of the coal within the premises leased by the plaintiff and others was owned by persons other than lessors.

(3) The Court erred in permitting the plaintiff to give evidence that the two tracts of land leased to the defendant, which purported on the face of the leases to contain in the aggregate 145 acres, actually contained 164 acres without producing any competent proof of such acreage or such ownership.

(4) The Court erred in giving, at the instance of the plaintiff, instruction No. 3.

(5) The Court erred in refusing to give, at the instance of the defendant, his Instructions Nos. 1 and 2.

(6) The Court erred in refusing to set aside the the verdict of the Jury as being contrary to the law and evidence in the case."

(1) Special plea number three is not in the record. References to it therein show that it alleged an outstanding superior title to the coal in a third party. The defendant is not prejudiced by the court's rejection of this plea, because it appears (R. p. 49) that the court offered to permit the defendant to introduce *under the general issue*, any competent evidence tending to show such outstanding title.

(2) This allegation of error is incorrectly stated. The court correctly struck out a verbal deraignment of title attempted by the witness Seafler; but during his examination the court stated (R. p. 52-3) that the defendant could offer any competent deeds tending to show an outstanding superior

title and also any competent testimony of an ouster of defendant or of possession adverse to the title of the plaintiff.

(3) Another incorrect allegation. The plaintiff did not testify that the two leases actually contained 164 acres. He stated that he had been so informed by an engineer of a company which had operated the coal, and that he had reported that acreage to defendant, who over a number of years had treated the reported acreage as correct.

(4) Defendant offered evidence to show that the workable coal was exhausted; but admitted that he had entered into a contract with third parties giving them the right to haul coal from an adjoining tract through an entry of the leased premises, and that it is being so used. Plaintiff's instruction No. 3 was given to meet that sitaution and is as follows:

"The Court instructs the jury that where one takes a coal mining lease on land for a fixed period of time at a minimum royalty to be paid during said term, although the lessee may have mined out all the coal in said leased premises, yet if he the lessee retains possession of the leased premises and uses the same for any purpose, he is bound to pay the agreed minimum royalty so long as he or any one holding under him, makes use of the leased premises or any part thereof for any purpose."

The leases in question were made in 1917, are for a period of twenty years, and provide unconditionally for a fixed sum as a minimum royalty. Exhaustion of the coal affords no defense to a demand for the rental, so long as the lessee retains possession under the leases. Barringer and Adam in their valuable treatise on the Law of Mines and Mining, 2nd Vol., p. 105, say that the authorities differ on whether or not a lessee may make such a defense under such circumstances. An examination of the decisions, however, shows that the difference has arisen only as to leases which require *the mining of a stipulated amount of ore,* or upon failure to do so the payment of a minimum royalty. Some courts have held that such a requirement bound the lessee to "diligence and promptitude in mining, but not for the productiveness of the mine," and that the covenant "is not one to pay royalty,

whether ore exists or not, but to pay royalty if ore exists, whether it is mined or not.'' Consequently, the non-existence of the ore was held to be a defense in an action for the royalty. *C. I. Mining Co.* v. *B. I. Mining Co.*, 70 Minn. 500, 505-6; *Vandalia Coal Co.* v. *Underwood*, 60 Ind. App. 675, 680-1; *Hewitt Mining Co.* v. *Dessau Co.*, 129 Mich. 590. These cases admit, however, that where a lease requires its payment ''as a dead rent, irrespective of produce * * * the lessee is liable to pay this minimum royalty as a dead rent even if no ore existed.'' That is the requirement here, and we find no division of authority on the construction of such leases. On a covenant similar to this the Indiana court held: ''The fact that sufficient coal could not be mined to make the royalty amount to the minimum rent, though it might be ground for abandoning the lease, constitutes no defence, so long as the defendants continue in possession, to an action on the lease, for the rent.'' *McDowell* v. *Hendrix*, 67 Ind. 513. See also *Vandalia C. Co.* v. *Underwood*, 55 Ind. App. 91, and authorities cited p. 99. The reasons impelling this construction are thoughtfully stated in *Fisher* v. *Coal Co.*, 184 Iowa 397, 400: ''As long as the lessee held any right under such lease, it operated as a continuing encumbrance upon the property of the lessor. It also saved to the lessee the speculative chances of the future, and deprived the lessor thereof accordingly. It would seem, therefore, elementary justice that, as long as the lessee claimed any of the benefits of the lease, it should be subject to its burden. On its face, the lease was valid and binding upon both parties until one or the other should elect to terminate it according to its terms. If the lessee desired absolution from further payment, of the minimum royalty, it fairly devolved upon it to take an irrevocable position to that end, and to so notify the lessor. An acceptance by the lessor would undisputably terminate the lease. A refusal by the lessor would make an issue which could be litigated, if necessary.'' See also *Virginia I. C. & C. Co.* v. *Graham*, 124 Va. 692; *Lennox* v. *Coal Co.*, 158 Mo. 473; Snyder, on Mines, sec. 1224; 40 C. J., p. 1034-5, sec. 645; 18 R. C. L., p. 1191-2, sec. 99.

(5) Defendant's instructions 1 and 2 are at variance to

·plaintiff's instruction No. 3. Consequently, they were correctly refused.

(6) Finding no error prejudicial to the defendant, and that the law sustains the plaintiff's demands, we hold that the trial court properly sustained the verdict of the jury, and its judgment is affirmed.

*Affirmed.*