BABCOCK COAL & COKE COMPANY

*v.*

BRACKENS CREEK COAL LAND COMPANY

(CC 708)

Submitted January 29, 1946. Decided March 19, 1946.

*Mahan & White*, for plaintiff.
*William L. Lee*, for defendant.

LOVINS, JUDGE:

Babcock Coal & Coke Company filed its original and amended bills of complaint against Brackens Creek Coal Land Company in the Circuit Court of Fayette County. Demurrers to the bills of complaint were sustained by the trial court, and the questions of law arising on the demurrers are here on certification.

The purposes of this suit are to cancel a mining lease, to relieve plaintiff of further liability on said lease, and to inhibit defendant from prosecuting actions to recover rents and royalties provided for therein. The original and amended bills of complaint and the demurrers thereto present the same questions in substance, and, therefore, for the purpose of this opinion we treat them as one bill and one demurrer. The material facts alleged by plaintiff are:

Defendant leased to plaintiff all coal in the "upper or Sewell seam" underlying a 368-acre tract of land "for the purpose of developing, mining, removing and carrying away" such coal "and making coke from the coal so mined and for such other purposes incident to the business of operating coal mines and coke plants." The term of the lease was for a period of thirty years, commencing December 22, 1920, with the additional pro-

678

vision that, " \* \* \* if at the expiration of the said term of thirty (30) years, if all the coal from said Sewell seam has not been mined from the said premises, the lessee will be given such additional time as may be required \* \* \* to mine and remove the coal upon the same terms herein expressed". Various other rights, incidental to the business of mining and coking operations were given plaintiff. In consideration thereof plaintiff agreed to pay to defendant "as rental for the said premises, royalties as follows; Ten cents (10¢) for each and every ton of 2240 lbs. of coal mined, dug, and carried away or used upon the said demised premises". Plaintiff further agreed that beginning with the year 1922, and each year thereafter, the sum of three thousand dollars "minimum rent or royalty" should be paid to the lessor whether the lessee shall have mined during such year a sufficient quanity of coal at the rate aforesaid to equal said sum, but it is agreed that the lessee, when it shall have paid the said three thousand dollars ($3000.00) minimum royalties for any one year and shall not have mined as much as thirty thousand (30,000) tons of coal that it shall have one year, next following, in which to mine additional coal above the minimum royalty to cover the amount overpaid on the year before, but in no event shall the minimum payments be less than three thousand dollars ($3000.00) per annum beginning with the year 1922". It is thereafter stipulated that "the rents and royalties herein agreed to be paid shall be deemed and treated as rents reserved upon contract by the lessor, and the lessor reserves to itself all the rights of a land-lord under the laws of the state of West Virginia for the collection of the same, and if any of the rents and royalties shall remain unpaid for thirty (30) days after the same become due, and payable \* \* \* the lessor shall have the right to enforce the payment of the same by the remidies given by the law against delinquent tenants." Plaintiff agreed to pay taxes assessed against the land and the coal covered by the lease.

The lease also contained the usual stipulations that

plaintiff should promptly lay out its mine and energetically and skillfully work the same according to the most modern and practical system of operating coal mines, and that it would permit defendant to examine its books, records, and maps, so that defendant could avail itself of an accurate check on the amount of coal actually mined from the premises.

Pursuant to the lease, plaintiff entered the demised property and mined coal therefrom until the latter part of 1944. On October 26, 1944, plaintiff gave defendant written notice that effective December 31, 1944, it would cancel and surrender the lease upon the grounds that there no longer remained coal of a quality or in a quantity that it could be profitably mined, and due to lack of thickness of the coal and faults and barren areas found in the leased premises, the cost of further production was prohibitive. Accompanying this notice was lessee's final royalty check amounting to the difference between the annual minimum royalty and the tonnage royalties theretofore paid in the year 1944. Defendant refused to accept surrender and cancellation of the lease and returned to plaintiff its check.

This suit was then instituted by plaintiff to rescind the lease. A summary of the facts and grounds for rescission are that plaintiff and defendant assumed at the time of entering into the lease that coal in the Sewell seam underlay all the lands and every part thereof "above the outcrop line of said seam", and that acting upon such assumption they contracted that it would require thirty years or more for the mining and removal of all the coal in said Sewell seam. Plaintiff commenced mining operations and alleges that the operations were done in a skillful manner, but notwithstanding such assumption and efforts of plaintiff in the course of the operation of the mine, plaintiff encountered faults, rolls, and irregularities in the Sewell seam of coal; that the roof was of soft material and could not be properly supported; that the Sewell seam diminished in height at certain points so that it is from twenty-two to six

inches high; and that the same could not be "practically or profitably mined, removed and sold." The bill alleges that the coal in the Sewell seam on the land of defendant is of such quality, height, and persistance, and is so situated that as a matter of practical commercial mining it is nonexistent.

Seven questions are certified, but we think the following summary thereof suffices to present all questions of law arising herein: (1) Is the lease ambiguous; (2) may rescission of the lease be justified on the ground that the Sewell seam of coal underlying defendant's land cannot longer be profitably mined; (3) is plaintiff's obligation to pay minimum royalty absolute or is such obligation an incentive for diligent and energetic operation of the lease; and (4) do the facts alleged show the impossibility of further performance by lessee and, if so, should the lease be rescinded?

Before discussing the foregoing questions we deem it necessary to determine whether the lease here considered is a sale of the coal in place or a lease thereof. A contract purporting to be a lease for mining purposes in which the person designated therein as lessee is required to mine and pay for all the coal in the land or to pay for coal whether the same is mined or not is a sale and not a lease. But if it is stipulated that the mining operations will be carried on for a definite period of time, and the lessee is obligated to pay only a certain royalty on a tonnage basis for the coal actually mined and the coal unnecessarily left in the mine, such contract is a lease and not a sale. The requirement that a sum certain to be paid as a minimum royalty for the period of the lease does not, without more, convert the transaction into a sale. *Coal Co. v. Coal Co.*, 113 W. Va. 1, 166 S. E. 491. In the case at bar all the coal in the Sewell seam was leased for a definite period of time, during which a minimum royalty of three thousand dollars each year was payable. Nevertheless, plaintiff is not required to mine and pay royalty for all the coal therein nor to pay any royalty for the coal remain-

ing after the expiration of the term of the lease. True, it is provided that plaintiff may mine and remove coal after the expiration of thirty years, but that is an optional right, and under the terms of the lease plaintiff could, after the expiration of thirty years, abandon the lease and mine no more coal. The contract between plaintiff and defendant constitutes a lease and not a sale. See *Coal Co. v. Coal Co., supra,* where the distinction between a contract of sale and one of lease is clearly stated.

We have carefully examined the lease out of which this litigation arises. No part of the lease is ambiguous, nor is the lease, when considered as a whole, of doubtful meaning. This being true, are we called upon to construe the lease, and, in so doing, may we consider the alleged assumptions of the parties thereto at the time it was made and their acts thereafter allegedly amounting to their practical construction thereof? A contract incorporating the intention of the parties and expressing the same in plain and unambiguous language calls for no construction. *Colerider v. Bank,* 125 W. Va. 760, 774, 25 S. E. 2d 903. A court can only apply and enforce the terms of such contract. Plaintiff asks that events happening more than twenty-five years ago be examined and evaluated as of the present. This may be proper if the lease between plaintiff and defendant, or any part thereof, is of uncertain or doubtful meaning, but, as noted above, there is no reason for interpretation, and we may not consider the events and circumstances extrinsic to the lease in ascertaining its meaning. The intent of the parties is not in doubt and we do not look to the acts of the parties allegedly amounting to a practical construction of its terms. *Mining Co. v. Fuel Co.,* 69 W. Va. 47, 70 S. E. 857; *Williams Pocahontas Coal Co. v. Berwind Land Co.* (4 C. C. A.), 76 F. 2d 319.

Plaintiff's bills of complaint indicate reliance on the fact that coal cannot be profitably mined by it from defendant's land. This position has been abandoned as not maintainable. If a party to a contract could be

relieved from performance on the ground that no profit would accrue from its performance, the stability and binding force of most, if not all, contracts would be destroyed. It is of frequent occurrence in the business world that a party to a contract finds that its performance is onerous and unprofitable; nevertheless, good faith and fair dealing call for performance. Equity will not grant rescission on the ground that mining is unprofitable. *Stonega Coal & Coke Co. v. Price* (4 C. C. A.), 116 F. 2d 618; *Hall v. Eversole's Admr.*, 251 Ky. 296, 64 S. W. 2d 891; *Lawrence E. Tierney L. Co. v. Kingston-Pocahontas C. Co.*, 241 Ky. 101, 43 S. W. 2d 517.

The question of liability of plaintiff for minimum royalties in some aspects is connected with the question relative to the impossibility of performance because of the nonexistence of coal in the Sewell seam, but for the purpose of analysis and discussion will be treated separately. In addition to the stipulation relative to payment of royalty for minerals actually mined, many leases contain a provision that minimum royalty shall be paid regardless of whether coal is actually mined. These provisions are classified: (1) those requiring payment of minimum royalty regardless of the amount of minerals mined, and (2) those requiring that a stipulated amount of minerals shall be mined. If the stipulation is of the first class a lessee is liable for the payment of minimum royalty although no minerals are or could be mined; if of the second class and the lessee did not assume the risk of exhaustion of the minerals, his obligation to pay the minimum royalty is discharged if the minerals do not exist. *Ridgely v. Conewago Iron Co.*, 53 F. 988; 1 Barringer and Adams on The Law of Mines and Mining, 89; 3 Williston on Contracts, Section 1567. For illustrations see 2 Restatement of the Law of Contracts, page 861, et seq. In a case involving a stipulation for minimum royalty in a coal lease where no entry has been made on the land, this Court held: "Stipulations in a lease of land for coal mining and coke manufacturing

purposes, binding the lessee to pay to the lessors, from and after a date therein specified, the sum of $5,000.00 per annum, during the life of the lease, as a minimum royalty for the demised property, whether the quantity of coal mined and coke manufactured shall produce that amount of royalty or not, and providing that all rents and royalties in the lease agreed to be paid shall be deemed and treated as rents reserved upon contract by the lessors, constitute, in the absence of any clause in the lease positively expressing contrary intent, an absolute undertaking to pay said sum." *Lawson v. Williamson Coal & Coke Co.,* 61 W. Va. 669, 57 S. E. 258. *Berwind White Coal Min. Co. v. Martin,* (3 C. C. A.) 124 F. 313. In the instant case the lease places the minimum royalty therein provided for in the category of rent reserved "upon contract", and that in "no event shall the minimum payments be less than $3000.00 per annum beginning with the year 1922." The lease clearly shows that the stipulation with reference to minimum royalty is one of hazard, and that plaintiff assumed the risk of the existence of coal to be mined from defendant's land sufficient in quantity to aggregate the total minimum royalties for the term of the lease.

On the question whether rescission of a contract of lease for mining purposes may be decreed where the minerals are nonexistent, there is a divergence of judicial opinion. See *Virginia Iron, Coal & Coke Co. v. Graham,* 124 Va. 692, 98 S. E. 659, where the cases are collated and discussed. In this jurisdiction it has been held that a lease of "all coal, timber and mineral privileges" on a tract of land entered into under a mutual mistake "as to the existence of a workable seam of coal" should be fully rescinded as to the coal and timber. *Bluestone Coal Co. v. Bell,* 38 W. Va. 297, 18 S. E. 493. In the *Bluestone Coal Company* case no mining operations had been commenced on the land. Admittedly, the land contained no workable seam of coal, and the successor of the lessee asserted the right to cut and remove timber from the land to be used for purposes other than mining thereon.

This right was denied by this Court. Exhaustion of mineral, however, is not a ground for rescission where the lessee retains possession of the leased premises. *Taylor v. Thomas,* 106 W. Va. 376, 145 S. E. 633. In the instant case the land covered by the lease was not entirely devoid of coal, plaintiff having mined coal therefrom for a period of approximately twenty-four years. Plaintiff has not retained possession of the leased premises. The question in the *Bluestone Coal Company* and *Taylor cases,* though cognate to the questions here presented, are not exactly similar. A grantee of coal in place, as distinguished from a lessee, is not entitled to rescind the sale because the coal is not as extensive in area as he expected, nor for the reason that a particular seam of coal did not exist on the land he purchased, provided there is a substantial quantity of coal in the land. *Light v. Grant & Co.,* 73 W. Va. 56, 79 S. E. 1011. Mutual mistake of parties to a contract for a sale of lumber as to the quantity of timber on the land from which the lumber was to be manufactured, the contract stipulating that the lumber was "to be cut from the manufacturer's timber holdings", excuses full performance of the contract if the timber on the land of the vendor was not sufficient to manufacture the amount of lumber specified in the contract. *Lumber Co. v. Coal Co.,* 83 W. Va. 341, 98 S. E. 563. See *McCormick v. Jordan,* 65 W. Va. 86, 63 S. E. 778, and *Roberts v. Lumber Co.,* 76 W. Va. 290, 85 S. E. 535, for discussions of the doctrine of impossibility of performance as applied to contracts other than mining leases.

Many cases illustrative of the application of the doctrines of mutual mistake, impossibility of performance and failure of consideration as grounds for rescission or reformation of contracts could be cited, but the cases hereinabove cited serve to show the limitations of those principles.

The facts alleged in plaintiff's bills of complaint are sufficient to show that further mining in the Sewell seam is impossible, but are such facts sufficient to auth-

orize a decree of rescission of the lease? Considering the facts alleged herein in the light of the principles enunciated in the cases herein cited on the subject of impossibility of performance, we do not think that they are sufficient to authorize a decree of rescission.

Generally, there is no implied warranty in a lease for coal mining purposes that the lease contains coal of a definite quality and quantity. 1 Barringer and Adams on The Law of Mines and Mining, 88; see *Clifton v. Montague*, 40 W. Va. 207, 21 S. E. 858. Certainly there is no express warranty of quantity or quality of coal in the Sewell seam in the lease here considered, and we may not supply such warranty by construction.

It may be assumed that plaintiff and defendant were not entirely without knowledge of the coal which was the subject of the lease, but notwithstanding such knowledge plaintiff agreed in unqualified terms to pay a minimum sum rather than to mine a definite quantity of coal. It is reasonable to infer that plaintiff assumed the risk as to the existence of coal in sufficient quantity and of such quality and persistence to permit full and complete performance of the contract. *Lehigh Zinc & Iron Works v. Bamford*, 150 U. S. 665, 14 S. Ct. 219, 37 L. ed. 1215. See *Laing v. Price*, 75 W. Va. 192, 196, 83 S. E. 497; *Moxham v. Sherwood Co. of West Virginia*, (4 C. C. A.) 267 F. 781. Accurate and exact knowledge of the height, persistence and regularity of the stratum of the coal and the consistency of the overlying strata of rock or slate is generally unavailable until those factors are determined by sufficient core drilling or actual mining; but a general knowledge of such factors may be obtained in advance of mining operations and a lessee may protect himself from the element of uncertanty by stipulations to that end in the lease. *Berg v. Erickson*, (8 C. C. A.) 234 F. 817. This the plaintiff did not do, but unconditionally stipulated it would pay minimum royalty and the taxes assessed against the land. *Lawson v. Williamson Coal & Coke Co., supra.*

The bills of complaint allege no facts which justify a rescission of the lease and, therefore, the rulings of the Circuit Court of Fayette County are affirmed.

*Rulings affirmed.*