Chief Justice Robertson,
delivered the Opinion of the Court.
On 13th of September, 1823, John Wilson sold all his pecuniary interest in the estate of Richard Tilton, deceased, to John Robertson, and guarrantied its amount to be at least @700; in consideration whereof, Robertson covenanted to pay Wilson @250 in Virginapaper on the bank of Richmond, and “$450 worth of merchantable manufactured tobacco, at twenty cents per pound, delivered in the town of Maysville, on or before the 25th of December, 1823.” '
On the 21st. of April, 1829, Wilson sued Robertson in covenant , charging as a breach of his covenant, a failure to deliver the tobacco according to his undertaking. On an issue on a plea of covenants jierforuied with leave to prove any fact which might have been pleaded, a verdict and judgment were rendered for Robertson, to reverse which Wilson prosecutes this appeal.
On the trial, the appellee proved that, on the 12th of December, 1823,-he deposited, in the warehouse of January in Maysville, 15 kegs of manufactured tobacco, weighing 2,369 pounds, subject to the order of the appellant, but which he refused to receive alleging that it was not such as he was entitled to, and which, therefore, still remained in the custody of January under the original consignment; and *79 fee also proved, that the tobacco thus deposited was “merchantable.” But it seems, from the bill of exceptions,-that, at the date of the covenant and of the consignment of the tobacco, there were two distinct kinds of manufactured tobacco merchantable in Maysville: one kind, sweated by a forced process in a steam, or swet house, and worth from 5 to 9 cents a.pound; the other kind, prepared by the ordinary process without any forced, or artificial sweating, and worth from 12-^ to 20, and perhaps 25 cents a pound, and that the tobacco, deposited by the appellee in December, 1823, had been manufactured by the steam process, and was far from being of the quality of tobacco thus sweated. This having been the substance of all the evidence, the appellant moved the court to instruct the jury: 1st. that, unless the tobacco which had been consigned, was worth $450 "they should find for him; 2nd. that the jury had a right to infer from the covenant and the parol evidence, that the parties intended by the terms — “merchantable tobacco at 20 cents per pound,” such tobacco as was generally selling at 20 cents a pound at the date of the covenant, and that, unless the tobacco which had been consigned was of that class, the jury should find a verdict for damages. The court refused to give either of these instructions, but instructed the jury that if the tobacco was merchantable, the appellant was bound to allow 20 cents a pound for it without regar.d to its value, or specific kind. The appellant then, offered to prove, by a witness who was present when the contract was made, what kind of tobacco the parties intended,when they used the words, “merchantable manufactured tobacco at 20 cents per pound;” but the court supposing that such testimony would contradict, or curtail, the legal import of the covenant, refused to allow it. Whether, or not, the circuit court erred in withholding, or in giving instructions, or in refusing to permit the testimony which was offered'by the appellant, is the only question presented for consideration.
There is no patent ambiguity in the covenant, its language is intelligible, and, per se, imports that 20 cents a pound were fixed as the price at which man- • *80 ufactured tobacco, which was merchantable, was f( ^e taLen by the appellant in discharge of the covenant by the appellee, to deliver $450 worth of tobacco at 20 cents a pound. Therefore, if extraneous facts be inadmissible, the circuit court decided correctly and its judgment is consequently right.
Latent ambiguicy m«y be parol evi- ^ deuce.
But the parol evidence which was given and that which was offered and rejected were admissable: no *act wbich was proved, or which the appellant offered to prove is inconsistent with the covenant. These facts can have only one of two tendencies, that is, either to apply the comprehensive and general terms of the covenant to a specific subject matter, or to prove a latent ambiguity, and then apply the words of the covenant according to the actual intention of the contracting parties. The term, merchantable, when applied to manufactured tobacco, may include tobacco not only of various qualities and values, but even of specifically different kinds and classes. When it was proved in this case, that there were two kinds of manufactured tobacco which, though both were merchantable, were essentially different not only in quality and value, but. in specific denomination and character, should the words of the covenant be still construed as necessarily comprehending all the qualifies and values of both kinds of tobacco, or may not extraneous proof shew that the parties intended the various qualities and grades of tobacco of the superi- or kind? We are inclined to the opinion, that the latter is the rationaal and legal interpretation of the contract,when all the facts are considered. It cannot bo presumed, that the appellant intended to allow 20 cent a pound for even the best quality of that kind of tobacco which was worth only from 5 to D cents. But it would not be unreasonable to infer, that he agreed to allow the maximum, or nearly that for tobacco of the kind, which was worth from I2|to 20, or 25 cents a pound; and this, as we are inclined to think, is the true meaning, and intent of the expressions “$450 worth of merchantable manufactured tobacco at 20 cents per pound,” when considered in connexion with the extraneous faot$. Such a restricted application of the comprehensive terms of the covenant may be authorized by principle and •authority. See Starke on Evidence, 1020-26. Peish *81 vs. Dickson, I. Mason’s Reports, 11. Goddard vs. Balow, I. Not and McChord, 45. Cole vs. Wendell, ’ VIII Johnson, 116.
Dissent,
Reid and Hard for appellant; Crittenden for defendant.
Bat it is not material, whether the parol proof re-salts necessarily in 'the construction of the covenant which we have intimated; for, however, that may be, we are satisfied, that the facts which were proved created a latent ambiguity, and that, therefore, the appellant had a right to prove which of the two kinds, or classes, of merchantable tobacc.o was intended by the parties to the covenant, but not that any particular quality of either kind, was contemplated. In proving that there were two kinds of manufactured tobacco, a latent ambiguity, as to the kind intended by the parties,was established. But as there must necessarily be various qualities of the same kind of tobacco, there cannot be a latent ambiguity as to the “quality” of either “/ciwti.”
Judgment reversed, and cause remanded for a new trial.