## Witten et al. v. Damron et al.

May 18, 1945.

30

L. J. May for appellants.

P. B. Stratton for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On September 27, 1879, John Damron and wife conveyed to Christian Damron, vendor's brother, a tract of land in Pike County, Kentucky, containing 70 acres. The deed contained this reservation, or exception: "Coal mineral excepted, with exceptions of what grantee wants to use on the farm the said grantor to pay all damages that may be done the farm in getting the coal out, * * *''. By mesne conveyances appellants acquired title to the tract, after which they executed, in 1926, an oil and gas lease to Ivyton Oil and Gas Company. No development was made under that lease, and it was surrendered to the lessors. They later again leased the land for the same purpose, and when the lessee in that lease was preparing to develop it, appellees—children and heirs at law of the grantors in the 1879 deed—began to assert title to the oil and gas under the land on the ground that their ancestors excepted and reserved *all* of the minerals in the deed he executed to his brother in 1879, and which claim is bottomed upon the contention that the above inserted reservation therein embraced all of the minerals underlying the conveyed land and was not limited or confined to underlying coal only, and that, since John Damron died intestate they inherited the oil and gas rights in the land from him, he, however, before his death having sold and conveyed the reserved coal rights thereunder to another. On the other hand appellants contend that the reservation in John Damron's 1879 deed reserved only the coal underlying the conveyed tract to his brother, and that all other minerals

underlying it were conveyed to the latter under whom appellants claim title to the involved oil and gas.

After appellees began to assert their ownership of the oil and gas rights under the land appellants filed this action in the Pike circuit court against appellees to quiet their title to the involved oil and gas. Proper pleadings presented the issue as to the ownership of the involved minerals and upon submission the court adjudged that appellees were the owners thereof and dismissed appellants' petition, and from that judgment they prosecute this appeal. The court wrote no opinion, and we are not informed as to the grounds upon which the judgment was based; but, since the only possible ground upon which the conclusion of the court could be rested is that the reservation or exception made by John Damron's deed to his brother in 1879 embraced all of the mineral underlying the conveyed tract, it necessarily follows that the court adopted that interpretation. The issue presented on this appeal is exclusively a legal one involving the construction and interpretation of the reservation made by John Damron which we have inserted supra, and which contains all of the language of that deed referring in anywise to the reservation.

The law by which courts interpret and apply reservations or exceptions in deeds is thus stated in the text of 16 American Jur. 615, section 309: ''In construing reservations or exceptions in deeds, the courts endeavor, if possible, to ascertain the intention of the parties, particularly of the grantor, from the language of the deed and to give that intention effect if it does not contravene any rule of law. If the language used therein is ambiguous or obscure in meaning, the subject matter and the attendant circumstances will be considered. Also, in virtue of the rule that a grant is construed most strongly against the grantor, when the language of an exception or reservation is ambiguous or doubtful, it will be construed in such way as to resolve doubts against the grantor in favor of the grantee, for the grant will not be cut down by the subsequent reservation to any extent beyond that indicated by the intention of the parties as gathered from the whole instrument. This rule, however, is to be applied only when the words of the exception or reservation are doubtful. If the language is sufficiently clear to define the character and extent of the reservation or exception, it must be given

effect. If other words, a construction against the grantor will not be adopted unless two interpretations, one of which would be in the grantee's favor and the other in the grantor's favor, are equally plausible.''

It is reiterated in Volume 36 of the same publication, page 303, section 33, from which we quote: ''The construction and effect of instruments conveying mineral property are determined in accordance with the rules applicable to conveyances generally, including the rule that the deed will be construed against the grantor, rather than against the grantee, because the grantor selects his own words. The intention of the parties to the instrument is to be sought and given effect. It should be gathered from an inspection of the instrument itself, unless the language used is so ambiguous as to leave the mind in doubt as to what the parties meant.''

Appellees' counsel cite in support of the judgment only two domestic cases, which are: Franklin Fluorspar Company v. Hosick, 239 Ky. 454, 39 S. W. 2d 665, and Hurley v. West Kentucky Coal Co., 294 Ky. 96, 171 S. W. 2d 15. But another domestic case in which the same question was involved is, Federal Gas, Oil & Coal Co. v. Moore, 290 Ky. 284, 161 S. W. 2d 46, but which is not cited by counsel for appellees. The fundamental rules contained in the excerpts supra were approved by us in each of the three domestic cases. However, it was concluded from the language of the reservations in those cases — as contained throughout the involved conveyances—was sufficient to reserve to the grantor all minerals underlying the conveyed land and was not confined to one specific mineral.

Since the intent of the grantor in making the exception or reservation is to be gathered from the entire language of the conveyance, our task is to determine what was the intent of John Damron by the language he employed in his deed to his brother in 1879, with reference to the minerals reserved by him therein? To begin with the rule is fundamental, and conceded by counsel for both sides, that if the reserving language—after the court has been placed in the position of the parties as developed through extraneous proof—ambiguity exists, it will be resolved aganist the grantor and in favor of the grantee, which rule applies to purely conveying language as well as that employed in making the reser-

vation, as will be seen from the text supra and some or all of the cited domestic cases.

It will be noticed that the language here employed in the reservation is "coal mineral," which alone might or might not confine the reservation to the specific mineral mentioned, dependent upon other language contained in the deed whereby the reservation became expanded so as to embrace all minerals underlying the conveyed land. There is nothing contained in the instant deed from which an inference might be drawn that it was the intention of the grantor to reserve any underlying mineral except coal. As employed in the only language of the deed referring to the reservation, the word "mineral" is in the singular, and the word "coal" is an adjective descriptive of that particular mineral, and nothing else appearing in the deed qualifying that interpretation, it would clearly appear to have been grantor's intention to confine the reservation to that particular mineral. However, in the latter part of the reserving language, conferring the right of the grantor to mine the reserved mineral, this is inserted: "grantor to pay all damages that may be done the farm in getting the *coal* out." (Our emphasis.) That language specifically shows that the grantor would be liable to the surface owner in extracting other minerals reserved by him if he possessed the right to do so under his reservation, and which is inconsistent with all rules and rights governing the extraction of minerals by the owners thereof with reference to the necessary damage done to the surface.

The fact that the instant grantor reserved the right to extract only the single mineral, coal, without liability for necessary damage to the surface, conclusively manifests an intention to reserve only the coal underlying the land he was conveying. If the interpretation of appellees is correct then it is inconceivable that the vendor in the deed would not also have provided for exoneration from damages in extracting minerals other than coal. Therefore, our interpretation is that on the face of his deed John Damron's intention was to reserve only the coal underlying the land he was conveying and that all other minerals were conveyed to his grantee, Christian Damron. Appellants, the remote vendees of the latter's title, became and are the owners of the particular minerals in contest, as well as all other minerals, if any, that may exist under the surface of their tract.

We have arrived at such conclusion independently of proven admissions by two or three witnesses which John Damron made after making the conveyance referred to that he did not intend to reserve any mineral under the conveyed land except coal.

It therefore follows that the court erred in dismissing the petition, and the judgment is reversed with directions to enter one in conformity with the prayer of appellants' petition and for such other necessary orders consistent with this opinion.

The Whole Court sitting.