TENNESSEE GAS TRANSMISSION CO., APPELLEE, *v.* BLACKFORD ET AL., APPELLANTS.*

(No. 194—Decided July 24, 1958.)

*Messrs. Reese & Willard,* for appellee.
*Mr. W. H. Middleton,* for appellant William C. Blackford.

GILLEN, J.  Plaintiff instituted this action in the Court of Common Pleas of Jackson County, Ohio, by filing a petition seeking injunctive relief against defendants.  The petition alleges, in substance, that plaintiff is engaged in the business of constructing, owning and operating pipe lines for the transportation and distribution of natural gas through a pipe line, and the business of buying, selling, furnishing and transporting natural gas; that on February 8, 1950, defendants, Walter S. Arthur, Wilbur L. Arthur and Billie L. Arthur, his wife, owners

*Motion to certify the record overruled, February 4, 1959.

of certain real estate described in the petition, entered into a right-of-way agreement with plaintiff whereby, for certain valuable considerations, plaintiff was granted the right, privilege and authority to lay, construct, maintain and operate gas pipe lines over and across the premises; that the agreement was duly recorded in the office of the County Recorder of Jackson County, Ohio; that, pursuant to the agreement, plaintiff entered on the premises and constructed a 26-inch pipe line across the premises, the center line of the pipe line being fully described in the petition; that on May 20, 1954, defendant William C. Blackford acquired from the defendants Walter S. Arthur, Wilbur L. Arthur and Billie L. Arthur, the right to mine the coal, limestone and clay under the premises by stripping or open-pit methods; that defendant William C. Blackford has proceeded to mine the minerals by stripping or open-pit methods and is now performing such operation within 30 feet of plaintiff's natural gas line; and that, in the course of such operation, defendant William C. Blackford has been blasting, with dynamite and other explosives, the coal and stone in close proximity to plaintiff's gas line, and threatens to cut and blast all support from beneath the gas line. The petition prays for a temporary order restraining defendants from removing and permitting others to remove coal, limestone or other mineral substances from the premises within 50 feet of the pipe line of plaintiff by stripping or open-pit methods, and from blasting, with dynamite or other explosives, within 50 feet of the pipe line of plaintiff or in such manner as to endanger the pipe line; and that, upon final hearing, such order be made permanent.

Defendant William C. Blackford filed an answer admitting certain allegations of the petition and denying others. The answer further avers that all mineral rights to the premises described in the petition were conveyed by Virginia O. West *et al.*, to Olive Ruth and William C. Blackford, by deed dated March 18, 1943, and recorded in book 121 at page 237 of the deed records of Jackson County, Ohio, and that the interest of this defendant vested several years prior to February 8, 1950, at which time plaintiff acquired its interest in the surface rights. The answer avers also that, at the time plaintiff acquired its right of way, defendant William C. Blackford was the owner of the mineral rights underlying the premises, which had been a

matter of record for several years. Defendant William C. Blackford also filed the following notice:

"Pursuant to the provisions of Section 2709.39 of the Revised Code of Ohio (formerly Section 11084, General Code), you are hereby given notice to conform to and proceed under the provisions of Sections 2709.01 and 2709.46, inclusive, of the Revised Code of Ohio, to appropriate certain premises as set forth in plaintiff's petition in the above cause wherein the defendant, William C. Blackford, owns the mineral rights as set forth in a conveyance made by Virginia O. West, et al., to Olive Ruth and William C. Blackford under date of March 18, 1943, and recorded in book 121 at page 237 of the deed records of Jackson County, Ohio, and has been denied the use thereof by a restraining order obtained by this plaintiff.

"Pursuant to the provisions of the foregoing statute and in conformity therewith, in the event you do not commence and proceed as aforesaid within ten (10) days from the receipt of this notice, the defendant, William C. Blackford, will proceed according to law."

This notice was apparently ignored by plaintiff. Thereafter defendant William C. Blackford obtained leave to file an answer and cross-petition, the answer being substantially the same as the one set forth above, and the cross-petition sought damages in the sum of $179,148. The parties agreed to submit the issues to the court upon an agreed statement of facts, except as to the question of damage to defendant, if any, under the allegations of his cross-petition. The trial court permanently enjoined and restrained defendants from removing coal, limestone or other minerals from their premises described in the petition by open-pit or stripping method, within a distance of 50 feet from plaintiff's gas pipe line and across such premises, and from blasting with dynamite, or other explosives, within 50 feet of the gas pipe line or in such manner as to endanger the pipe line. The notice of appeal and assignment of errors are not specifically directed to this judgment.

Thereafter, the trial court, on its own motion, outlined the issues to be submitted to a jury on plaintiff's cross-petition for damages. In a written statement the trial court concluded as follows:

"The court, therefore, determines the only issue to be de-

cided by the jury is the market value of the minerals owned by the defendant in their natural state in the ground at the time of the appropriation, which was the date of the issuance of the permanent injunction, plus any damage to the residue, if any. Evidence will be limited to these issues according to the accepted methods of approving market values. Exceptions of both parties to this ruling are noted.''

The issues were submitted to a jury resulting in a verdict for plaintiff. Judgment was entered on that verdict from which an appeal on questions of law has been perfected. During the progress of the trial, defendant filed an amended answer conforming to the ruling of the court in regard to the issues under consideration. The assigned errors are:

(1) That the judgment entered on the finding of the jury in denying defendant compensation for his mineral rights is contrary to the provisions of Section 19, Article I of the Constitution of Ohio.

(2) That the decision of the court in reducing defendant's cross-petition from an action based on damages for the loss of his business and the sale of his minerals to an appropriation proceeding is contrary to law, and more specifically, for the reason that the case had been partly submitted to Judge C. W. Smith and an agreed statement of facts entered relative to the documentary evidence.

(3) That the court erred in his instructions to the jury by handing them two copies of verdict forms, one for the plaintiff and one for the defendant, whereas the instructions should have been limited to damages for the defendant.

(4) That the court erred in instructing the jury that the defendant had not been enjoined from removing minerals by the deep-mining method and had only been enjoined from removing the coal and minerals by the open-pit or strip mining method.

(5) That the order of the court in holding that the restraining order should be made permanent is contrary to the law as the plaintiff has acted in bad faith throughout this proceeding.

(6) That the judgment is contrary to and against the weight of the evidence.

(7) For all other errors apparent in said record which may be prejudicial to this defendant.

The record discloses that on December 17, 1901, Ann E. Dillinger, in whom fee title to the real estate involved in this litigation was vested, conveyed by warranty deed to the Richland Coal & Railway Company all the minerals, including coal, iron ore, limestone, clays, shales, oil and gas, underlying the real estate. The grantee was to have the right to use such amount of the surface of the land as may be necessary in the removal of the minerals, together with the right of way for such tramways, railroad or railroads, as may be engaged in hauling the minerals to markets; the right to haul minerals from other lands by it or them owned through such lands without charge; the right to deposit on the ground the refuse and screenings from minerals mined from such lands hereby granted; and the minerals to be mined and deposits made so as to do the least possible injury to the surface of the land; but the Richland Coal & Railway Company, neither its successors nor assigns, is not to be responsible for any damage in the surface by reason of the mining and removal of the minerals and the deposit of the refuse.

The Richland Coal & Railway Company was predecessor in title to the 78 acres of mineral rights acquired by defendant William C. Blackford in 1943. Ann E. Dillinger was predecessor in title to the remainder of the real estate owned by defendants Walter S. Arthur and Wilbur L. Arthur. The amount of land occupied by the right of way of plaintiff for the construction of its pipe line was 2.7245 acres. At the time Ann E. Dillinger conveyed the mineral rights, in 1901, to the Richland Coal & Railway Company, the only method of mining coal and other minerals employed in the area was by the underground process. The record shows that the first strip mine in Ohio was not operated until the year 1910; that strip mining in Jackson County was not begun until the early part of 1934; and that strip mining in Ohio did not become general until the 1930's.

It seems to be well settled that where the surface of the land and the minerals beneath belong to different owners, each of such owners possesses certain rights in the use and enjoyment of his property, which must be respected by the other.

In the court's opinion in the case of *Burgner* v. *Humphrey,* 41 Ohio St., 340, at page 352, it is said:

"It seems to be well settled, that when one owning the whole fee, grants the minerals, reserving the surface to himself, his grantee will be entitled only to so much of the minerals, as he can get without injury to the superincumbent soil, unless, the language of the instrument clearly imports, that it was the intention of the grantor to part with the right to subjacent support. * * * The owner has a natural right to the use of his land, in the situation in which it was placed by nature, and if the surface of the land and the minerals beneath belong to different owners, the owner of the surface is entitled to have it supported by the underlying mineral strata, and, an action may be maintained against the owner of the minerals, for the damages sustained by the subsidence. Each owner must so use his own, as not to injure the property of the other. * * *"

In the case at bar, the rights of the parties are fixed by the provisions of the deed executed by Ann E. Dillinger to the Richland Coal & Railway Company, December 17, 1901. In construing the provisions of such instrument, it is necessary to give full force and effect to all its terms and provisions. It is said in the case of *Coal Co.* v. *Mining Co.,* 40 Ohio St., 559, that:

"1. In construing a written instrument, effect should be given to all of its words, if this can be done by any reasonable interpretation.

"2. A clause making a grant passes everything included within the ordinary meaning of its words, unless it clearly appears from an inspection of the entire instrument, read in the light of the relation of the parties to the subject matter of the contract when it was made, that the words were used in a more limited sense."

The general rule applicable to the situation is stated in 36 American Jurisprudence, 400, Section 174, as follows:

"The owner of the surface of the land and the owner of the minerals when they are severed from the surface estate have separate and distinct titles. With the ownership of these separate estates go rights of use and enjoyment which are in a sense relative and which should be exercised by each other with due regard to the rights of the other owner. So far as it is possible,

these respective rights should be adjusted to each other, so as to conduce to the full enjoyment of the property. The surface owner may use and deal with his property in any legitimate manner not inconsistent with the rights acquired by the owner of the minerals; and as will be seen, the owner of the minerals has a limited right to use the surface in reaching and removing the minerals.''

The record in the instant case makes clear the fact that, at the time the mineral rights were conveyed by Ann E. Dillinger to the Richland Coal & Railway Company in 1901, coal was mined either by the shaft or drift mining process. In each of these methods the coal was removed through a single opening in the surface. The strip mining process was unknown at that time. This method of mining necessitates the removal and destruction of all surface above the coal. Although it may be recognized, in recent years, as an improved method of mining, it is an entirely different process from the one contemplated by the parties in 1901. There can be no question that the deed conveyed the mineral rights described therein together with full and free rights of ingress, egress, regress and of way, and other necessary and convenient rights and privileges in, upon and over the described premises, for the purpose of mining or removing the minerals contained therein. The deed of conveyance contains a provision releasing grantee from damage in the surface by reason of the mining and removal of minerals and the deposit of refuse. The instrument, however, specifically provided that the minerals were to be mined and deposits made so as to do the least possible injury to the surface of the land. The language contained in the deed of conveyance makes clear that it was the intent of the parties to have grantor retain title to all of the surface except so much thereof as may be required for the purpose of removing the minerals in the accustomed method of mining known at that time. The deed did not grant the right to destroy all of the surface by the strip-mining process. Defendant William C. Blackford recognized this fact and, in 1954, entered into a contract with the Arthurs whereby he was granted the right to remove the minerals underlying the 78 acres by the strip-mining process. Plaintiff, however, had previously acquired its right of way across the surface of 2.7245

acres of the property. Under such circumstances, the trial court properly enjoined defendant from destroying that portion of the surface by strip mining.

Prior to submission of the issues raised by defendant's cross-petition, the trial court ordered that the cross-petition be reduced to an action for damages resulting from appropriation of defendant's property. It is well settled that property may be regarded as appropriated to a public use although there have been no condemnation proceedings. See, *Dodson* v. *City of Cincinnati*, 34 Ohio St., 276; *City of Norwood* v. *Sheen, Exr.*, 126 Ohio St., 482, 186 N. E., 102, 87 A. L. R., 1375; and *Fries* v. *Wheeling & Lake Erie Ry. Co.*, 56 Ohio St., 135, 46 N. E., 516. Early during the progress of the litigation in the instant case, defendant William C. Blackford sought to have plaintiff proceed with an appropriation action but later abandoned this effort. He was afforded full opportunity to prove the damage, if any, sustained by him by reason of the injunction granted to plaintiff. No claim is made and no evidence was offered to prove that plaintiff's pipe line penetrated or disturbed any of the minerals owned by him. Plaintiff did not acquire title to or ownership of any of the minerals under the 2.7245 acres either by reason of the right-of-way agreement or the injunction. See, *East Ohio Gas Co.* v. *James Bros. Coal Co.*, 53 Ohio Law Abs., 438, 85 N. E. (2d), 816. The pipe line was buried four feet in depth through the surface portion of the property and extended along the crest of a hill. Defendant William C. Blackford had the burden of proving his damage. See, *Tennessee Gas Transmission Co.* v. *Wolfe.* 159 Ohio St., 391, 112 N. E. (2d), 376.

In support of his claim, defendant offered two expert witnesses who estimated the number of tons of each of the four minerals underlying the premises, to wit: No. 5 coal, plastic clay, limestone and No. 4 coal. They placed a high valuation per ton for each strata of such minerals. Plaintiff offered two expert witnesses who were familiar with mining operations in the area. These witnesses testified that the No. 5 coal was of such inferior quality as to render it worthless; that the limestone could not be produced at a profit by any method of mining and that there was no market for the clay; that the No. 4 coal was from 90 to 110 feet below the surface, which fact rendered

it impractical to remove this strata of coal by the strip-mining process; and that none of the No. 4 coal in the area could be profitably mined by strip mining where the overburden exceeded 40 or 50 feet. One of the witnesses testified that he had purchased approximately 10,000 acres of like or similar property in the area, including both surface and mineral rights, at a price of $12.50 per acre. The deed of conveyance received by defendant William C. Blackford when he purchased the mineral rights underlying the 78 acres, in 1943, carried a revenue stamp of the value of 55 cents.

Where a tract of land taken by eminent domain contains mineral deposits which constitute part of the realty, the existence of such minerals can be taken into consideration in determining the compensation so far as they affect the market value of the land. In determining the value of such minerals, the best rule to follow is the market value of like or similar property in the area. In the instant case, however, the jury was warranted in finding, from the evidence that plaintiff had not appropriated any of defendant's minerals. Evidence of probative value was adduced to prove that the No. 4 coal could be profitably mined only by the deep-mine method and that the other minerals had no market value. The injunction merely enjoined defendant from mining the minerals by the open-pit or strip-mining process. The jury returned a general verdict which was not tested by interrogatories. It was solely the function of the jury to determine whether defendant had suffered any damage, as well as the amount of such damage, if any. The credibility of the witnesses and the weight to be given their testimony rested with the jury. A verdict will not be disturbed by a reviewing court when the record contains substantial evidence to support such verdict. We have examined each of the errors complained of and have reached the conclusion that the trial of this cause is free from prejudicial error. The judgment of the court below is, therefore, affirmed.

*Judgment affirmed.*

COLLIER, P. J., and RADCLIFF, J., concur.