**Willie BELCHER and Dahlia Belcher, Plaintiffs-Appellants,**

v.

**W. E. ELLIOTT, Francis L. Rice, Charles Moore and W. W. Lindsey, Defendants-Appellees.**

No. 14802.

United States Court of Appeals Sixth Circuit.

Dec. 6, 1962.

Rehearing Denied Feb. 4, 1963.

F. Dale Burke, Frankfort, Ky., and Dan Jack Combs, Pikeville, Ky., for appellants.

William J. Baird, Pikeville, Ky. (Baird & Hays, Pikeville, Ky., of counsel), for appellees.

Before WEICK and O'SULLIVAN, Circuit Judges, and DARR, Senior District Judge.

DARR, Senior District Judge.

In consideration of an exchange of real estate and on May 21, 1943, Willie Belcher conveyed to L. D. Mullins and his wife, Gertrude Mullins, approximately 50 acres of land situated on Owl Branch in Pike County, Kentucky. The deed was prepared on a form deed furnished by G. W. Osborne, deputy county court clerk, who took the acknowledgments. Mrs. Gertrude Mullins prepared the deed from the Mullins to the Belchers by filling in all the blanks including the description. Mrs. Mullins also filled in the blank form deed, except the description, conveying the 50 acres to the Mullins from Willie Belcher.[1] Mr. Belcher dictated the description of the land. Following the description and in a separate paragraph are the words, "Gas & Oil Rights sold."

At the time of the final judgment, the Belchers' suit in the District Court was against the defendants-appellees, who claimed to have acquired the gas and oil rights. This came about by the Mullins having sold the gas and oil rights in and under said land to defendant-appellee, W. E. Elliott, by deed dated February 3, 1956. The defendants-appellees, Francis L. Rice and Charles Moore, each acquired a 1/16 interest in said gas and oil rights from Mr. Elliott. Defendant-appellee Lindsey seems to have been made a party because he was in charge of the drilling of the well on the property, but it does not appear that he ever answered or was proceeded against in anyway.

██ The relief claimed in the District Court by plaintiffs-appellants was to have the Court declare (1) that the conveyance from Belcher to the Mullins, on its face, excepted from the transfer the gas and oil rights and (2) in the alternative for the Court to reform the deed in such manner as to reveal that the actual intent was to except the gas and oil rights.[2]

The District Judge ruled that the claim for reformation of the deed was barred by Kentucky statute of limitations, but, if not, the proof was insufficient to warrant reformation.

We are of the opinion, without considering the statute of limitations, that the findings of fact of the District Judge on the issue of reformation of the deed were not clearly erroneous. His judgment in this respect will not be disturbed.

The District Judge also construed the words "Gas & Oil Rights sold," contained in the deed from Belcher to the Mullins, to be ambiguous and stated that the question must be resolved in favor of the grantee under Kentucky law, as well as the general law. The judgment was for the defendants-appellees in accord with this construction.

The following excerpt from an encyclopedic work was quoted with approval by the Kentucky Court in Witten v. Damron, (1945), 300 Ky. 29, 187 S.W.2d 834:

"[GENERALLY.] In construing reservations or exceptions in deeds, the courts endeavor, if possible, to ascertain the intention of the parties, particularly of the grantor, from the language of the deed and to give that intention effect if it does not contravene any rule of law. If the language used therein is ambiguous or obscure in meaning, the subject matter and the attendant circumstances will be considered. Also, in virtue of the rule that a grant is construed most strongly against the grantor, when the language of an exception or reservation is ambiguous or doubtful, it will be construed in such way as to resolve doubts against the grantor in favor of the grantee, for the grant will not be cut down by the subsequent reservation to any extent beyond that indicated by the inten-

---

1. Dahlia Belcher, wife of Willie Belcher, signed the deed but her name did not appear therein, and under Kentucky law she did not convey any right she had, which was only inchoate dower right.

2. The land rights in question are situated in Kentucky and, therefore, Kentucky law applies.

tion of the parties as gathered from the whole instrument. This rule, however, is to be applied only when the words of the exception or reservation are doubtful. If the language is sufficiently clear to define the character and extent of the reservation or exception, it must be given effect. In other words, a construction against the grantor will not be adopted unless two interpretations, one of which would be in the grantee's favor and the other in the grantor's favor, are equally plausible."

16 Am.Jur., Deeds, § 309, p. 615.

■ A construction of the deed was and is a legal question requiring this Court to interpret the meaning of the words "Gas & Oil Rights sold" as contained in the deed.

The granting portion of this deed includes the description and is in the present tense. Land cannot be transferred except by writing and necessarily is in the present tense. The writing itself is the transfer when executed. The word "sell" in the granting portion is in the present tense and the word "sold" in the sentence "Gas & Oil Rights sold" is in the past tense of "sell," which gives notice that gas and oil rights were theretofore disposed of and not included in the conveyance.

Assuming that the words "Gas & Oil Rights sold" are obscure, as found by the District Judge, the most plausible viewpoint is that these words favor the grantor as being an exception from the land transferred.

■ The parol evidence rule does not preclude the admission of parol evidence for the purpose of aiding in the interpretation or construction of a written instrument, where the language of the instrument itself, taken alone, is such that it does not clearly express the intention of the parties or the subject of the agreement. 32 C.J.S. Evidence § 959, p. 891, citing the following Kentucky cases: Coldiron v. Martin's Fork Coal Co., 203 Ky. 577, 262 S.W.2d 948; Roberts v.

Roberts' Ex'r, 299 Ky. 646, 186 S.W.2d 801.

■ The conduct and statements of the parties made at or before the execution of a document and the surrounding circumstances may all be considered in the interpretation thereof. Ainsworth v. Ainsworth (Ky.), 321 S.W.2d 33, 35; Powell v. Owens, 290 Ky. 108, 160 S.W. 2d 383; Linn v. Milliken, 279 Ky. 771, 132 S.W.2d 62; Lincoln National Life Insurance Company v. Means, 264 Ky. 566, 95 S.W.2d 264, certiorari denied 299 U.S. 578, 57 S.Ct. 42, 81 L.Ed. 426.

There is a dispute in the evidence as to what did occur at and before the preparation of the deed, but the disputed part will not be considered. It is undisputed that Mr. Belcher dictated the description and used the words "Gas & Oil Rights sold."

The Belchers had the gas and oil rights under this land leased to the Howe Oil & Gas Company at the time the deed was made. Beyond question, the Belchers intended to except gas and oil rights.

The Mullins heard the words "Gas & Oil Rights sold" when placed in the deed and remained silent. Although they testified that they did not know what these words meant, the record indicates that the Mullins were not ignorant of gas and oil rights having been bought and sold in their area in Pike County, Kentucky. This conduct raises some inference that the Mullins understood that gas and oil rights were excepted.

■ Evidence of usage is admissible in the interpretation of deeds. The form of deeds is a matter of usage. 25 C.J.S. Customs and Usages § 28, p. 117.

A deed conveying real estate, with a description of the land without more, transfers all minerals under the lands including gas and oil. The usage and custom in preparing a deed for a fee simple title or otherwise, which is intended to include all interest in the land, simply gives a description of the real estate. If gas or oil rights are mentioned in a deed, it is always for a special

purpose, generally as an exception from the transfer. It would seem odd indeed that there would be a conveyance of land which includes the gas and oil rights and then repeat "Gas & Oil Rights sold," for the purpose of conveying such rights.

The Mullins must have known about the usage in transfers, as above set out, for Mrs. Mullins had prepared their deed to the Belchers, which simply described the land, obviously understanding that it carried with it gas and oil rights.

■ The conduct of the parties, after the execution of the deed, may be considered as an aid to its practical interpretation. Seaboard Surety Company v. Brauer (Ky.), 240 S.W.2d 536.

Mr. and Mrs. Belcher, sometime after the lease to the Howe Oil & Gas Company terminated, leased the gas and oil rights under this tract of land to the Kentucky-West Virginia Gas Company. Plainly the Belchers' conduct revealed that they believed that the deed excepted the gas and oil rights.

Nearly thirteen years after the making of the deed, Mrs. Mullins wrote a lawyer about its wording and later wrote the Kentucky-West Virginia Gas Company telling this company that they were paying the royalty to the wrong person.

Mr. Mullins testified as follows:

"Q. 15 You did know—it was your understanding that you did not get the oil and gas didn't you?

"A. Well, I didn't know. At that time [the time the deed was drawn] I didn't really know what the meaning of it was but I learnt a little something about it later on.

"Q. 16 What did you learn later on?

"A. Just by the talk of other people I heard that they was a drawing off of it later on, not to know whether it was true or not. I haven't seen anything to know whether they did or did not."

So we have Mr. Mullins testifying he did not know whether the deed carried

the gas and oil rights at the time it was made, but later did hear that the Belchers were receiving delayed rentals from the land in question. He did nothing about it. In the letter that Mrs. Mullins wrote Attorney Rice, she made no claim that the words "Gas & Oil Rights sold" did not constitute an exception to the land transfer, but that the word "sold" was false, as the property had only been leased. The fair inference drawn is that Mrs. Mullins had thought all along that the gas and oil rights were excepted and she was trying to find a flaw in the exception which would invalidate it.

The conduct of the Mullins after the execution of the deed tends to reflect a belief on their part that the words "Gas & Oil Rights sold" was an exception to the grant of land.

While we are mindful that reservations and exceptions in a deed should use apt words, there is always the question of what are apt words. Certainly the description of what was said to be excepted in the deed is expressed in very apt words, "Gas & Oil Rights." The word "sold" in the deed becomes apt when it is considered that it is the past tense of sell as used in the conveying portion of the deed.

But if there be doubt as to the meaning of the words in question and considering the admissible proof to collaterally aid in the interpretation, it is definitely more plausible to interpret the words "Gas & Oil Rights sold" to be an exception to the land transferred rather than to say that these words were a part of the description to transfer the gas and oil under the surface when such rights had already been conveyed in the description.

■ We conclude that the words "Gas & Oil Rights sold" in this deed constituted an exception of all the gas and oil in or under the land with right of easement on the surface to drill and remove gas and oil. All subsequent deeds or contracts whereby defendants-appellees claim title to the gas and oil rights in and under this land are clouds on the

plaintiffs-appellants' title and should be removed.

We come to the question as to whether the defendants-appellees are entitled to a lien on the property for enhanced value by reason of drilling the well.

A Kentucky statute provides in KRS 381.460:

"If any person, believing himself to be the owner by reason of a claim in law or equity founded on a public record, peacefully occupies and improves any land, and the land, upon judicial investigation, is held to belong to another, the value of the improvements shall be paid by the successful party to the occupant, or the person under whom and for whom he entered and holds, before the court rendering judgment or decree of eviction causes the possession to be delivered to the successful party."

The general rule is set out in Kelly v. Kelly, 293 Ky. 42, 168 S.W.2d 339, 341, 148 A.L.R. 331, as follows:

"As said in 31 C.J. 319, § 27: As a general rule in order that one may recover compensation for improvements made on another's land, even in a court of equity, it is necessary that he shall have made such improvements in good faith while on bona fide adverse possession of the land under color of title. There must be three concurrent essentials: (1) The occupant must have made the improvements in good faith; (2) he must have been in possession adversely to the title of the true owner; and (3) his possession must have been held under color or claim of title."

Mr. Elliott and his associates were in possession adversely to the Belchers and had possession under color or claim of title. It could be that the drilling of the well was a considered risk of title on the part of Messrs. Elliott, Rice and Moore. But this does not necessarily eliminate good faith. Mrs. Belcher came to Kentucky from the Belcher home in Ohio and talked to her lawyer, Mr. Burke. Mr. Burke told her that Mr. Elliott was preparing to drill or had started drilling a well on the land in question. Neither the Belchers themselves, nor their attorney, gave notice to Elliott to stop the drill work on the land and did not take legal action to enjoin Elliott and associates from proceeding.

This standing by on the part of the Belchers, with knowledge of the improvements going on, together with the other elements mentioned, causes us to conclude that in equity and all fairness, under Kentucky law, the defendants-appellees are entitled to a lien upon the gas and oil rights and any moneys that may be due plaintiffs-appellants, for the amount by which the improvements have enhanced the value of the land, not exceeding the cost of the well and the connecting pipe.

The Judgment of the District Court is reversed and the case remanded for further proceedings in accord with this opinion.