**Blair RIGGS, Plaintiff,**

v.

**ISLAND CREEK COAL COMPANY, Defendant.**

**Civ. No. 70–227.**

United States District Court,
S. D. Ohio, E. D.

Jan. 28, 1974.

Philip E. Howes, Canton, Ohio, Thomas Beetham, Robert B. Werren, Cadiz, Ohio, for plaintiff.

Ted S. Cooper, Richard A. Baker, De Selm & Moore, Cambridge, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

WEINMAN, Senior District Judge.

This cause was tried to the Court without a jury on June 7, 1973. Fed.R. Civ.P. 52(a) states that:

"  .   .   . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. .   .   ."

Accordingly, the Court now files the following opinion and order.

This case involves the alleged taking by the Island Creek Coal Company, defendant herein, of a seam of coal from under the lands of the plaintiff herein, one Blair Riggs. The land in question lies in Harrison County, which is in the eastern part of the State of Ohio. The plaintiff is a resident of Ohio, and defendant is a Delaware Corporation. The monetary amount in controversy is greater than $10,000 exclusive of interests and costs. The case thus comes to this Court predicated upon diversity jurisdiction, and pursuant to the doctrine of the case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the law of Ohio shall govern disposition of this case. Moreover, the Sixth Circuit has held that in the case of coal underlying land located in Kentucky, the law of Kentucky shall be controlling, Rowe v. Chesapeake Mineral Co., 156 F.2d 752 (6th Cir. 1946), *See also,* Belcher v. Elliott, 312 F.2d 245 (6th Cir. 1962). The same principle of course applies to this case of deeds concerning Ohio land.

The real estate of plaintiff is subject to a "warranty deed for coal" which was conveyed by the ancestor of plaintiff to a coal company of which the defendant is now the successor in interest. This warranty deed was conveyed to defendant's predecessor in interest in the year 1923.

The parties to this litigation have established by stipulation (with submission to the Court of copies of the relevant documents) that they are the proper owners of the properties involved in this case, and each has shown proper chain of title to his respective claim. It is the exact nature of that claim which is the crucial point of this lawsuit, however. The decisive language of the deed to be interpreted in this case is as follows:

". . . do hereby give, grant, bargain sell and convey to the said The Akron Coal Company, Grantee, its successors and assigns, all the coal of the No. six vein or seam, being more particularly and definitely described as that certain vein or seam of coal which lies 170 feet below the surface of the southeast corner of the Healy Latham farm in said township, Drill Hole No. 5, and which vein or seam of coal also lies 190 feet below the surface on the William Hoop farm in said township, Drill Hole No. 4, within and underlying the following described lands. . . ."

Plaintiff is the successor in interest of the grantor of the above conveyance; defendant is successor of the grantee. The above mentioned No. 6 vein of coal lies under the real estate of plaintiff. The parties agree that defendant is proper owner of that seam of coal. However, another seam of coal underlies the land of plaintiff. That seam, or vein, is known as the No. 7 vein of coal. The numbers six and seven describe different veins of coal in fact, but the drill hole depths mentioned in the above conveyance reach down to the No. 7, rather than the No. 6, vein of coal. Therein lies the difficulty with the above deed and the heart of this controversy. Relying on the drill hole depths as recited in the deed, the defendant has admittedly removed the No. 7 rather than the No. 6, vein of coal. Also, plaintiff is the owner of something called the "No. 7 vein" of coal. If the most proper way to describe coal strata is by *drill hole depths*, defendant mined its own coal, to which it has a good and valid deed. If the most proper way to describe coal strata is by the *vein or seam number*, defendant has wrongfully mined the coal of plaintiff and is liable to him in damages.

Disposition of this case then depends on whether defendant was justified in reliance on the drill hole depths recited in its coal deed in removing coal from the lands of the plaintiff. It must be emphasized that at all times during the present litigation, defendant has stipulated and admitted that it has mined coal properly referred to as the "No. 7 vein" located on the real estate of plaintiff, even though their deed is only to the "No. 6 vein." Defendant's only defense herein has been that it was justified in basing its mining operations on the drill hole depths recited in its deed.

Neither the state courts of Ohio nor the Sixth Circuit appears to have ruled on the crucial point of whether coal is more properly described by vein number or by drill hole depths in a coal deed. To that extent, this would seem to be a case of first impression. The general rule in Ohio is that deeds are generally construed most strongly against the grantor, 17 O.Jur.2d Deeds § 92 (1972). Parol evidence is also admissible if the deed cannot be fairly construed from its face alone. The Sixth Circuit follows the rule that the construction of deeds is a legal question for the Court, Belcher v. Elliott, 312 F.2d 245 (6th Cir. 1962), but also realizes that all surrounding circumstances at the time of execution may be considered as an aid to proper interpretation. The way language is commonly used by the people in an area, for example, is important. "Evidence of usage is admissible in the interpretation of deeds. The form of deeds is a matter of usage." Belcher, supra, at 247. The Sixth Circuit thus once held that a District Court was correct to admit parol evidence to identify which vein of coal was reserved by a particular grantor, Sturtevant v. Hart, 327 F.2d 695 (6th Cir. 1964).

■ In the present case the critical question was whether the coal conveyed to defendant by the deed in question was best described by "No 6 vein" or the recitation of drill hole depths, both of which descriptions are found in the deed in question, but which, by the admissions of all parties, certainly do not refer to the same stratum of coal. It was thus necessary for the Court to hold a trial and take parol evidence on the issue of how coal seams were described and conveyed in the Eastern Ohio coalfields in the 1920's. The Court felt this to be the best method by which to serve the very object of deed construction under the law of Ohio, i. e., to ascertain the true intent of the parties thereto, 17 O. Jur.2d, Deeds §§ 85, 86 (1972).

The Court has now heard and observed the witnesses in this case, has studied the factual evidence and testimony in depth, and has weighed and considered the legal arguments made by the parties herein. Having done so, the Court is resolute in its opinion and judgment that plaintiff has proven his case by a very great preponderance of the evidence, and that defendant should be and is liable to him for the wrongful taking of plaintiff's coal, that is the coal underlying plaintiff's real estate which is properly known and described, as a matter of factual usage as well as a matter of law, as the "Vein No. 7" coal, even though the only coal defendant owns which lies under the plaintiff's land is the "No. 6 coal," as recited in defendant's deed.

The Court further finds, as matters of fact, that the true intent of the original parties to the deed in question was to convey the "No. 6 vein" of coal only; that the normal and accepted usage in Eastern Ohio at the time the deed was made was to convey strata of coal by seam or vein number and not by drill hole depths; that the grantor of the deed in question would have assigned no significance at all to the recital of drill hole depths in the deed because as an ordinary and reasonably prudent man in Eastern Ohio he would not have made conveyance of a seam of coal in that manner; that inasmuch as the drill hole depths recited in the deed were not even on his land, the grantor of the original deed cannot be charged with any particular knowledge as to their significance, if any; that coal is most properly, commonly, and particularly described by miners, the general populace, and the legal profession as per its seam number without reference to drill holes; that any reference on the face of defendant's deed to drill hole depths is mere surplusage; that such surplusage is absolutely without meaning absent extraneous experimentation totally divorced from the face of the deed itself; and, finally, that defendant acted wrongfully and unreasonably in relying on the drill hole depths recited in its deed, rather than properly on the coal vein number, as a pretext to go onto the land of plaintiff and remove the No. 7 vein of coal therefrom.

■■ The defendant makes much of the fact that his deed describes the coal as that which is "more particularly and definitely" located at certain drill hole depths. Thus, defendant hopes to prevail based on the rule that, in the construction of a deed, more particular descriptions of what is conveyed govern the general descriptions. Defendant's reliance on that theory is misplaced in this instance. Mere recital of the words "more particularly and definitely" on the face of a deed need not by some mystical process actually invest the terms which follow with greater particularity and definiteness in fact. Were such the case, words would rule rather than serve us. Rather, what is really the more particular reference in a deed must in cases of ambiguity be determined from the totality of the facts and circumstances surrounding its execution, see Belcher, supra. It is for this reason that the Court wishes to emphasize its factual finding that the coal conveyed by the deed in question in this case is in actual fact more particularly and definitely described as the "No. 6 vein" of coal.

In addition to the above findings, the Court wishes, in the interest of clarity, to make further observations on the evidence presented in this case. The Court notes from reading several coal deeds submitted into evidence in this case that virtually all of them refer to the coal conveyed by seam Number alone, and make no mention at all of drill holes. It is also noted that these coal deeds are often executed between farmers, who may be quite uneducated, and coal companies anxious to acquire a valuable mineral right. It thus seems consonant with the best interests of justice to view these deeds from the perspective of the "ordinary reasonable and prudent man" (read plain folks, farmers, miners, etc.).

Two experienced coal businessmen who testified for plaintiff herein indicated that coal was referred to by the vein or seam number, and not by drill holes. Also, a very early Ohio State Court case concerning the very coal lands here in question was made available, in copies, to the Court during this litigation. The pleadings and the entry in the case clearly indicate that the Judge and the lawyers for both sides thought of and referred to the coal in question as per its vein or seam number. Against all of this evidence of custom and usage, defendant offered only the testimony of an "expert" geologist[1] to the effect that the use of drill holes is the most scientifically accurate way to describe the location of coal. But, this testimony is irrelevant to the legal issue of interpretation of a particular deed for coal, and to the factual issue of the intent of the grantor and grantee of the deed, viewed in the context of the usage to which they would have been accustomed. The Court also notices judicially that due to the effects of past periods of geological upheaval on the earth's stratigraphy seams of coal would not necessarily lie at continuous depths under the ground, so that use of drill hole depths as a means of identification could often result in the impracticality and expense of pockmarking a whole region with drill holes in order to locate coal. It is certainly more reasonable, it seems to the Court, to think of the coal in terms of veins, and to identify it by naming or numbering the veins. That was in fact the eastern Ohio practice in the 1920's and even remains so today.

That the legal profession itself, often responsible for drafting deeds, uses the vein number reference is indicated by cases not only in Ohio, but other states as well, which discuss coal deed problems in terms of vein or seam numbers. See, e. g., Chalfant v. Birney, 126 N.E.2d 359, 71 Ohio Law Ab. 158 (Ohio Com.Pl. 1954); Tennessee Gas Transmission Co. v. Blackford, 108 Ohio.App. 19, 160 N. E.2d 336 (Ohio 1958); East Ohio Gas Co. v. James Brothers Coal Co., 85 N.E. 2d 816, 53 Ohio Law Ab. 438 (Ohio Com.Pl.1948); U. S. Coal Co. v. Wayne Coal Co., 12 Ohio App. 1 (Ohio 1919). The Akron Coal Co. v. M. S. Orr and Lelia Orr, Civil No. 6351, Common Pleas Court of Harrison County (Ohio 1924); Light v. E. M. Grant & Co., 73 W.Va. 56, 79 S.E. 1011 (1913); Babcock Coal and Coke Co. v. Brackens Creek Coal Land Co., 128 W.Va. 676, 37 S.E.2d 519 (1946). Usage in other states may also involve alphabetical or proper name references, as opposed to vein numbers, to refer to coal. See, e. g., Dougherty v. Thomas, 313 Pa. 287, 169 A. 219 (1933), Lenox Coal Co. v. Duncan Spangler Coal Co., 265 Pa. 572, 109 A. 282 (1920); Luther v. Pennsylvania Game Comm., 381 Pa. 442, 113 A.2d 314 (1955). Significantly, no cases in Ohio nor any of these neighboring jurisdictions contain any indication that coal is identified by reference to drill hole depths.

As to the use of veins or seams to describe coal generally, the practice is further exemplified and recorded at 58 C.J. S. Mines and Minerals § 3, where it is stated that:

> "The terms 'vein,' 'lode,' and 'ledge' are generally used as synonymous

---

1. This witness at first was inclined to testify for plaintiff. He later, for unexplained reasons, decided to testify for defendant.

terms, and also as synonymous with the terms 'bed' or 'seam' . . . The definitions given by geologists are different from those used by miners. . . . Miners . . . used the term 'lode' or 'vein' before geologists attempted to give it a definition, *and as used by miners the term means that formation, or defined body of ore or mineral, by which the miner can be led or guided in finding such ore or mineral,* and it is such lodes and veins that are contemplated by the mining statutes." [Emphasis added].

The Sixth Circuit is no stranger to the interpretation of deeds to coal and mineral rights, see e. g., Belcher v. Elliott, *supra;* Rowe v. Chesapeake Mineral Co., supra; Peabody Coal Co. v. Pasco, 452 F.2d 1126 (6th Cir. 1971), The Elk Horn Coal Corp. v. Allegheny Coal Sales, Inc., 391 F.2d 253 (6th Cir. 1968); Delta Drilling Co. v. Arnett, 186 F.2d 481 (6th Cir. 1950); Johnson v. Republic Steel Corp., 262 F.2d 108 (6th Cir. 1958). The Sixth Circuit, in its opinions, has also followed the accepted practice of referring to coal by the seam or vein number rather than any mention of drill hole depths, see, e. g., Sturtevant v. Hart, 327 F.2d 695 (6th Cir. 1964); Peabody Coal Co. v. Erwin, 453 F.2d 398 (6th Cir. 1971); Howard v. Hi Hat Elkhorn Mining Co., 295 F.2d 81 (6th Cir. 1961); Hi Hat Elkhorn Coal Co. v. Inland Steel Co., 370 F.2d 117 (6th Cir. 1966); Thornberry v. Buchanan County Coal Corp., 323 F.2d 517 (6th Cir. 1963). Of course, none of these cases pass on the question now directly before this Court, but they are mentioned as a courtesy to the parties to bring the body of Sixth Circuit law on coal deeds to their attention. The cases do, however, seem to further exemplify the common nature and propriety of what this Court finds to be true as a matter of fact in Ohio—that the most particular way to describe and convey a body of coal, is by its vein number or name. This is the factual basis for this Court's holding that even when the deed here in question is construed most favorably to the grantee therein, the inescapable fact is that the grantor conveyed vein No. six and the defendant herein mined vein No. seven, having unreasonably relied on surplusage in his deed which refers to certain irrelevant drill hole depths.

The Court makes two observations with regard to the issue of damages herein. Firstly, defendants were not justified in relying on the drill hole depths in their deed. Secondly, defendants would have been more reasonable and prudent to have brought an action to quiet title in this case prior to doing any mining on the real estate of plaintiff. Therefore, defendant's taking of the coal is hereby found not to have been innocent; negotiations and/or briefs on the issue of damages are ordered to proceed on that basis.

Wherefore, judgment is hereby rendered in this case for plaintiff on the issue of liability alone. The parties shall make a good faith attempt to settle the case on the issue of damages. If no settlement is reached within forty days of the filing of this opinion, the parties shall submit to the Court briefs and stipulations on the issue of damages. These briefs shall proceed on the assumption that defendant's taking of the coal was not an innocent mistake. If the parties are unable to settle the case, or the Court unable to decide the damages issue from the briefs submitted, a trial will be ordered as to damages.

It is so ordered.